

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0149-14

**MICHAEL EDWARD DANSBY, SR., Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## KAUFMAN COUNTY

ALCALA, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, and COCHRAN, JJ., joined. COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined. KELLER, P.J., and KEASLER and HERVEY, JJ., dissented.

## O P I N I O N

This, the second petition for discretionary review filed by Michael Edward Dansby, Sr., appellant, presents only a question of preservation of error. In his present petition, appellant challenges the court of appeals's determination on remand that error was not preserved with respect to his complaint regarding his conditions of community supervision, which led that court to affirm the trial court's judgment revoking his deferred-adjudication community supervision and ordering

his imprisonment for indecency with a child. *Dansby v. State*, No. 05-10-00866-CR, 2014 Tex. App. LEXIS 903, 2014 WL 259014 (Tex. App.—Dallas Jan. 22, 2014) (mem. op. on remand, not designated for publication). In his sole question presented for review, appellant contends that the court of appeals erred by determining that his failure to raise a Fifth Amendment objection to the conditions of community supervision at the time that they were imposed resulted in procedural default of his complaint on appeal.[1] Appellant argues that he cannot be faulted for failing to object to the conditions on the basis that they violated his Fifth Amendment constitutional right because he was not placed on notice that he would be required to "incriminate himself" as part of those conditions. We agree with appellant. We, therefore, reverse the judgment of the court of appeals and remand the case to that court to address the merits of appellant's Fifth Amendment complaint.

## I. Background

In December 2005, appellant's granddaughter was twelve years old. While driving her home one day, appellant stopped on the side of a street, asked her to take her pants down, and tried to touch her sexual organ. He stopped when she became uncomfortable and he resumed driving, but then pulled over again onto the side of a street. He placed her hand on his genital organ after pulling down his sweat pants. Though appellant was initially charged with aggravated sexual assault of a child for this conduct, that charge was reduced to the second-degree felony of indecency with a child pursuant to a plea bargain.

In July 2008, following appellant's entry of a plea of guilty, the trial court placed appellant

---

[1]Appellant's ground states, "The court of appeals erred in ruling that Dansby waived appellate review of his constitutional claim. Dansby's agreement to abide by the probation terms did not constitute a knowing and intelligent waiver of his Fifth Amendment protection against compelled self-incrimination, nor did Dansby waive appellate review of his constitutional claim at any time after being placed on probation."

on five years of deferred-adjudication community supervision. During those courtroom proceedings, the trial court ordered appellant to comply with "sex offender terms and conditions," described only in those general terms and without any specific details as to what those conditions would require. That same day, appellant's general conditions were modified through a written document acknowledged by appellant outside of a formal courtroom proceeding. That written modification order, entitled "Order Modifying the Conditions of Community Supervision," for the first time included conditions requiring appellant to take and pass a polygraph examination "without any admissions" and to successfully complete a sex offender treatment program. Although the trial court's amended conditions were not imposed in a formal courtroom setting, appellant signed the modification order agreeing to comply with the conditions and waiving "formal hearing and appearance before the court."

Appellant complied with the vast majority, if not all, of the requirements of his community supervision, except that he refused to answer questions about his victims other than the complainant in this case. Based on this refusal, he was determined to have failed to participate fully in his treatment. He attended weekly therapy sessions for almost a year with Linda Young, a licensed clinical social worker; submitted a psychosexual life history questionnaire; participated in an Abel Assessment for Sexual Interest Interpretation and a Personality Assessment Inventory; admitted to the sexual assault of his granddaughter; and passed two polygraphs to confirm that he was complying with the conditions of his community supervision. His progress on community supervision quickly stagnated, however, when he refused to answer any questions during the course of his therapy or during a polygraph examination about his sexual history that would have required him to reveal

general information related to his victims other than his granddaughter.[2]  Appellant continued to refuse to provide any of this information even after Young and the polygraph examiner each informed him that he was not to reveal specifics about his victims such as names, ages, or their relationships with him, and that only "generic, non-identifying information" was requested. Believing that his refusal to reveal his entire sexual history to the polygraph examiner made his continued sex-therapy counseling problematic, Young unsuccessfully discharged appellant from that therapy.[3]

---

[2]Appellant submitted to a polygraph examination in April 2009, about nine months into his period of community supervision.  The examination was conducted by Andy Sheppard's Polygraph Services, which submitted a written report to the trial court summarizing the results of appellant's examination.  The report stated,

> **CASE DETAILS**
> . . . Per JPCOT guidelines, this exam will address pre-probation sexual crimes and deviant sexual behavior, excluding [appellant's] instant offense.
> **PRE-TEST INTERVIEW**
> [Appellant] brought his original psychosexual life history questionnaire to the polygraph appointment.  I explained to [appellant] that I would not be asking for names, dates, specific identifiers, or addresses of pre-probation offenses, in case there were any.  He advised me his attorney told him not to say anything that might result in a prosecution.  I again reassured him that the information I was collecting from him would consist of his age, his victim's ages, what he did to the victim, and whether the victim was an acquaintance or stranger. . . . When I asked him, "Do you have any other victims?", he politely refused to answer the question. . . . Because [appellant] refused to answer a question that would be at the heart of this exam, I was left no other option than to terminate the interview.

[3]In a letter to appellant's community supervision officer, Young stated,

> [Appellant] has spent much of his time in group [therapy] "lying and conning." When confronted, he was highly insulted to think that anyone would believe he could have done, what in fact, he did do. [Appellant's] Sex Offender Group participation is minimal.  Occasionally, he will confront others, but provides very little real information regarding his own deviance.  He is very guarded and most of his replies are brief or he does not answer at all.  For some time now, he has refused to have a sexual history polygraph. This polygraph is a necessary part of the treatment process. . . . In order to avoid incriminating himself, he was told to give only generic, non-

In August 2009, the State filed a motion to revoke appellant's community supervision, alleging that he had violated two conditions of community supervision. The State alleged that he violated a condition "in that he refused to obtain a sexual history polygraph" as requested by his community-supervision officer and that he violated another condition "in that [he] failed to attend and successfully complete the Sex Offender Treatment Program." Appellant pleaded not true. He also filed a motion to quash the State's motion to revoke and the order modifying the conditions of community supervision asserting, in pertinent part, that the conditions he had allegedly violated "infringe[d] on [his] right under the United States and Texas Constitution to remain silent and to be protected from self incrimination as provided for in the Fifth Amendment of the United States Constitution."

After holding a hearing on the State's motion to revoke at which Young, the polygraph examiner, and appellant's community-supervision officer each testified, the trial court found it true that appellant committed both of the pleaded violations of his terms of community supervision. At the sentencing hearing, appellant acknowledged that he understood that the modified conditions required him to take and pass a polygraph examination as to his sexual history, but he did not concede that he had agreed to forfeit his Fifth Amendment rights. After revoking his community supervision, the trial court sentenced appellant to eighteen years' imprisonment. Appellant filed a motion for new trial asserting that the trial court, "without notice to the Defendant or his attorney, amended the terms of the plea bargain by adding additional conditions of probation which were not previously agreed to by [appellant]." Appellant's motion for new trial was overruled by operation

identifying information when speaking about any prior criminal behavior. He continued to refuse the polygraph.

of law.

On direct appeal, the court of appeals determined that the trial court's revocation of appellant's community supervision was premised on reasons other than his invocation of the Fifth Amendment, and it did not reach the merits of appellant's Fifth Amendment challenge. *Dansby v. State*, No. 05-10-00866-CR, 2012 WL 1150530, at *5 (Tex. App.—Dallas Apr. 9, 2012). This Court reversed the judgment of the court of appeals. *Dansby v. State*, 398 S.W.3d 233, 234 (Tex. Crim. App. 2013). This Court held that the court of appeals had erred by concluding that appellant's discharge from the sex offender treatment program was not a product of his invocation of his Fifth Amendment privilege, and we remanded the case so that the court of appeals could address the merits of appellant's arguments under the Fifth Amendment. *Id*. at 239, 242-43. On remand, the court of appeals held that, because appellant did not object to the specific conditions of community supervision at the time they were imposed or at any time prior to the filing of the State's motion to adjudicate, appellant forfeited his complaint that the conditions violated his constitutional rights under the Fifth Amendment. *Dansby*, 2014 WL 259014, at *4. Appellant's current petition for discretionary review challenges the court of appeals's opinion on remand by asserting that appellant lacked notice that the trial court's conditions of community supervision would require him to abandon his Fifth Amendment constitutional right.

## II. Community Supervision Conditions Did Not Give Notice of Requirement That Appellant Waive His Fifth Amendment Right

The narrow question in this case asks whether the record shows that appellant was placed on notice that his conditions of community supervision would require him to waive his Fifth Amendment constitutional right with respect to his revelations about other victims while discussing

his sexual history. At the outset, however, we quickly dispense with the State's assertion that appellant's Fifth Amendment rights were not implicated under these circumstances in light of the instructions he received from his therapist and polygraph examiner who told him not to reveal the personal details of his sexual-assault victims in discussing his sexual history. Like the court of appeals, we reject this argument. The plain language in the federal Constitution's Fifth Amendment states, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V; *Minnesota v. Murphy*, 465 U.S. 420, 104 S. Ct. 1136, 1139 (1984). Contrary to the State's suggestion, a person's Fifth Amendment right applies as equally to his generally incriminatory statements as it does to specific statements about particular victims or incidents, and it continues to apply even to individuals on community supervision. *See Chapman v. State*, 115 S.W.3d 1, 5-6 (Tex. Crim. App. 2003).[4] Having determined that appellant had a continuing Fifth Amendment right to remain silent about other victims, we address (A) the requirement that a defendant must preserve his complaint as to the conditions of his community supervision at the time

---

[4]Here, the polygraph examination at issue is Type B. The record shows that this polygraph examiner employed the recommended guidelines for clinical polygraph examinations for sex offenders by the Joint Polygraph Committee on Offender Testing. The guidelines for specific sex offender polygraph examination describe two types. Type A is a disclosure examination for the instant offense. Type B is a disclosure examination for verification of sexual history, described as follows:

> These disclosure examinations explore sexual histories including additional victims, therapeutic issues, and sexual deviance prior to the date of conviction. Disclosure examinations over sexual histories specifically exclude the offenses for which the examinee was arrested, convicted and placed under supervision. . . . Oftentimes, offenders deny illegal sexual behavior and ideation, except for what is known to officials. The issues under examination may pertain to multiple sexual history deviance by the examinee; for example, those issues prior to the date of conviction identified by therapists or others on sexual history questionnaires.

that the conditions are imposed, and (B) the reasons why, despite that requirement, appellant did not forfeit his complaint under the circumstances in this case.

**A. Defendant Must Preserve Complaint As to Conditions of Community Supervision**

Because the placement of a defendant on community supervision occurs in the form of a contract between the trial court and a defendant, a defendant who is fairly notified of the conditions of community supervision at a hearing at which he has an opportunity to object forfeits any later complaint about those conditions, as long as those conditions do not involve a systemic right or prohibition. *Speth v. State*, 6 S.W.3d 530, 534-35 (Tex. Crim. App. 1999). An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant. *Id.* at 534. Conditions not objected to are affirmatively accepted by the defendant as terms of the contract. *Id.* By entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract. *Id.* A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, "must complain at trial to conditions he finds objectionable." *Id.*; *compare Gutierrez v. State*, 380 S.W.3d 167, 177 (Tex. Crim. App. 2012) (principles of waiver do not apply to conditions that violate an absolute prohibition or systemic requirement because those conditions are not subject to "ordinary principles of waiver or procedural default").

To be subject to procedural default under these circumstances, a defendant must be aware of the condition of community supervision in time to object at trial. *Speth*, 6 S.W.3d at 534 n. 9 ("This assumes the probationer knew what the conditions were in time to object at trial."). A trial court may make a defendant aware of the conditions of community supervision by informing him

of the requirements orally, in writing, or both. *See id*. A trial court faced with a defendant's objection to a community-supervision condition would have the option to sustain the objection and remove or alter the condition, to overrule the objection thereby continuing to require a defendant to abide by the condition, or to take any other appropriate action. *See id*. at 534-35 ("A trial objection allows the trial court the opportunity to either risk abusing his discretion by imposing the condition over objection or reconsider the desirability of the contract without the objectionable condition."). In *Speth*, for example, this Court observed that Speth was "questioned about potential conditions, was orally informed by the trial court of the conditions assessed, and signed a written version of the conditions at the punishment hearing following adjudication of guilt." *Id*. at 534 n. 9. In light of Speth's awareness of the conditions of community supervision, this Court held that his failure to object to those conditions forfeited any complaint about those conditions on appeal. *Id*. Similarly, in *Gutierrez-Rodriguez v. State*, this Court held that Gutierrez-Rodriguez forfeited her complaint on appeal by failing to object to the conditions of community supervision at the time that they were imposed, and it explained that the record established that "the restitution requirement was discussed during the punishment stage hearing, so [Gutierrez-Rodriguez] had an opportunity to object to it." *See Gutierrez-Rodriguez v. State*, ___ S.W.3d ___, Nos. PD-1026-13, PD-1027-13, 2014 WL 4843957, at *2 (Tex. Crim. App. Oct. 1, 2014).

**B. Appellant Did Not Forfeit His Challenge to the Community-Supervision Conditions**

The court of appeals determined that appellant was placed on notice that he would have to disclose his sexual history with other victims because (1) he was aware that the offense report mentioned his other victims, (2) during formal proceedings, the trial court informed him that he would have to comply with sex offender conditions, (3) outside of formal proceedings, the trial court

modified his conditions of community supervision to add a requirement that he take and pass polygraphs, and appellant signed consent forms during the course of his evaluations, treatment, and testing agreeing to take polygraphs and disclose his sexual history, and (4) he was constructively aware of statutes describing sex offender conditions as including polygraphs and sex offender counseling. *Dansby*, 2014 WL 259014, at *4-6. After specifically discussing each of these reasons, we decide that the court of appeals erred by determining that appellant forfeited his challenge to the community-supervision conditions.

**1. The Offense Report Is Immaterial**

Although appellant knew that the offense report included names of individuals who, in addition to the complainant, claimed to also have been victimized by him, that knowledge is not an appropriate basis for concluding that he was on notice that the trial court's conditions of community supervision would require him to admit to his conduct with respect to those victims. The court of appeals determined that appellant knew from the contents of the offense report that people in addition to the complainant claimed to be his sexual-assault victims and that this placed him on notice of the conditions of community supervision requiring him to take and pass a polygraph examination and successfully complete a sex offender program. *Id*. at *4. We disagree with this analysis. Though appellant was aware of the existence of other victims, he would also be aware of his Fifth Amendment right not to be a witness against himself as to those victims. *See* U.S. CONST. amend. V. The information in the offense report, therefore, is immaterial to the question whether he was placed on notice that he would have to waive his Fifth Amendment rights as a necessary predicate for taking and passing a polygraph examination and successfully completing a sex-offender program.

**2. Trial Court's Formal Proceedings Did Not Give Appellant Fair Notice**

Although it did have a formal hearing at which appellant was generally ordered to comply with the sex offender conditions of community supervision, the trial court's statements to appellant at that hearing did not provide him with fair notice that he would be required to waive his Fifth Amendment right in order to comply with the conditions. The court of appeals quoted the following portion of the formal proceedings, which were on the record, to support its conclusion that "appellant knew that the sex offender conditions included a polygraph examination during which he would be asked to disclose his past sexual history." *Dansby*, 2014 WL 259014, at *5. The record shows:

| | |
|---|---|
| The Court: | Have you had a chance to go over the terms and conditions of probation with [your attorney]? |
| [Appellant]: | Yes, Your Honor. |
| The Court: | And you understand it? |
| [Appellant]: | Yes, Sir. |
| [State] | . . . I would like to inquire whether or not [appellant's attorney] has gone over the special terms and conditions for sex offenders that will be applicable to this case? |
| [Defense Counsel]: | We have, Your Honor. |
| The Court: | Okay. And you understand those? |
| [Appellant]: | Yes, sir. |
| . . . . | |
| The Court: | [Appellant], there are various conditions that go along with this type of offense, such as needing to register as a sex offender and needing to keep that up-to-date. . . . And I assume you have talked to [your attorney] about what these conditions are? |

| [Appellant]: | Yes, sir. |
| The Court: | You have discussed all of the ramifications of the sex offender plea? |
| [Appellant's attorney]: | We understand there will be continued sex offender registration even after the period of probation has been satisfied. |

In addition to this oral exchange on the record, the trial court gave appellant written conditions of community supervision ordering him to comply with "sex offender terms and conditions," but without detailing what those terms and conditions would be. This oral and written information provided by the trial court to appellant demonstrates that he was fully aware that he would have to comply with special sex-offender conditions of community supervision, but it is silent as to the specifics of whether he would be required to participate in sex offender counseling, to take polygraphs, or to waive his Fifth Amendment right with respect to his sexual history with victims other than the complainant. Although he was informed at the trial court's formal hearing that he would have to comply with general sex offender conditions, appellant was not placed on fair notice that he would be required to waive his Fifth Amendment right as part of those conditions. *Compare Speth*, 6 S.W.3d at 534 n. 9; *Gutierrez-Rodriguez*, 2014 WL 4843957, at *2. Appellant, therefore, cannot be faulted for failing to assert an objection on Fifth Amendment grounds to the trial court's order requiring compliance with general sex offender conditions.

### 3. Appellant Did Not Have Opportunity to Object to Modified Conditions

For three reasons, we also decide that appellant cannot be faulted for failing to preserve his Fifth Amendment complaint as to the modified conditions of his community supervision that additionally included the specific requirements that he take and pass a polygraph examination and

that he complete sex offender treatment. First, the modified conditions, which simply stated that he would have to take and pass a polygraph "without any admissions," did not place appellant on fair notice that waiver of his Fifth Amendment rights would be required in order for him to comply with his conditions of community supervision. After its formal hearing ended, the trial court's "Order Modifying the Conditions of Community Supervision," in pertinent part, stated,

> [T]he conditions of community supervision in the above numbered cause(s) are hereby modified to require/delete the following:
>
> **Condition #30** Submit to a polygraph examination when requested to do so by the Community Supervision Officer, at such times the Community Supervision Officer may direct & is required to pass said polygraph *without any admissions*.
> . . . .
> **Condition #36** Within 10 days, you shall begin a sex offender treatment program approved by the court or your Supervising Officer & pay all costs of the program; you shall abide by all rules & conditions of the program & you will not leave the program till successful completion or unless you have the permission of the court or your supervision officer.[5]

(Emphasis added).

Although the trial court's order included the phrase "without any admissions," we cannot agree that this ambiguous phrase placed appellant on notice to assert an objection on Fifth Amendment grounds. On the one hand, the phrase could mean that appellant would be required to take and pass a polygraph without having to admit to his offense against the complainant or any sexual conduct of any kind against anyone. On the other hand, the phrase could mean that appellant could take and pass a polygraph by admitting to his entire sexual history but omitting any details that could lead to his prosecution for offenses for which he had not been convicted. That was the

---

[5]At the motion-to-revoke hearing, appellant's community supervision officer testified that appellant understood that these conditions were imposed rather than deleted even though the written document stated "require/delete."

interpretation of the phrase that the polygraph examiner and therapist each gave to this phrase. Because there are two equally reasonable views of the meaning of this phrase, we cannot conclude that the inclusion of the phrase "without any admissions" was adequate to place appellant on notice to assert a Fifth Amendment objection to the modified conditions.

Second, even assuming that the phrase "without any admissions" placed him on notice to object on Fifth Amendment grounds, appellant did not have a fair opportunity to object to the modified conditions and preserve that complaint because the modification order was not made at a formal hearing in court. In the absence of a formal hearing at which he could have objected and obtained a ruling on any challenge to the modification order, appellant cannot be faulted for failing to preserve his appellate complaint as to the modification order. *See Gutierrez-Rodriguez v. State*, 2014 WL 4843957, at *2.

For this same reason, we disagree with the court of appeals's reliance on statements by appellant made during the sentencing portion of the revocation hearing after the trial court had already found true the State's allegations that he violated the terms and conditions of his community supervision and revoked his deferred adjudication. *Dansby*, 2014 WL 259014, at *5. At the sentencing hearing, appellant testified that at the time the trial court entered the order modifying his original community-supervision terms, he was told he "would have to do a sexual history polygraph." *Id*. The court of appeals determined that this acknowledgment by appellant shows that he was placed on notice that he would have to take a sexual history polygraph and that he should have complained at that time. The court of appeals stated, "Although he said there was 'no discussion about what it entailed,' there was a clear opportunity at this point in time to ask about what that polygraph entailed or object to the specific condition requiring him to take and pass a

sexual history disclosure polygraph." *Id*. The court of appeals, however, failed to appropriately recognize that the modification order did not take place at a formal hearing before the trial court so that appellant never had the opportunity to assert a Fifth Amendment objection or to obtain a ruling as to the modified conditions.

Third, although appellant signed the modified conditions that included language indicating that he was waiving "formal hearing and appearance before the court," the record fails to show that counsel was present when appellant signed the modified conditions or that he understood the consequences of that waiver. A waiver not only must be voluntary but must also be a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013). For it to be valid under the Due Process Clause, a waiver must be an intentional relinquishment or abandonment of a known right or privilege. *Id*. (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 S. Ct. 1019 (1938) (appellate review indulges every reasonable presumption against waiver of counsel); *Trevino v. State*, 555 S.W.2d 750, 751 (Tex. Crim. App. 1977) (holding that courts indulge every reasonable presumption against waiver of fundamental constitutional rights). In this situation, we cannot agree that a defendant whose counsel is not present may waive a formal hearing and appearance before a court and thereby forfeit his appellate complaint on federal constitutional Fifth Amendment grounds. And for these same reasons, we cannot agree with the court of appeals that, by merely signing consent forms during the course of his sex offender treatment and polygraph examinations, appellant forfeited his right to complain on appeal about a violation of his federal constitutional Fifth Amendment right. [6] *Dansby*,

---

[6]In October 2008, appellant signed written "General Conditions of Treatment" provided to him by Young. The conditions, among others, informed him that progress in the program included "bringing up problem areas that the offender may have had." The conditions noted that "THE

2014 WL 259014, at *4.

**4. Statutes Describing Sex-Offender Conditions Inadequate to Provide Notice that a Defendant Will Be Expected to Waive His Fifth Amendment Right**

The State contends that because statutes describe the requirements for sex offender treatment, appellant was on constructive notice that he would have to waive his Fifth Amendment right.[7] At most, the statutes inform people that sex offender treatment includes polygraphs and inquiry into a person's sexual history, but the statutes do not mandate the trial court to require a defendant to disclose all of his sexual victims. Instead, the statutes state that "[e]fforts shall be made to acquire the following information [about sexual history and other victims] gathered in the assessment process." 22 TEX. ADMIN. CODE § 810.64, Ch. 810 as amended adopted to be effective October 22, 2006, 31 Tex. Reg. 8520. Nothing in this statute suggests that the source of the information about sexual history and other victims must necessarily be the defendant himself. Furthermore, even if he

---

CLIENT MAY BE ASKED TO COMPLY WITH INDIVIDUALIZED TREATMENT CONDITIONS DEPENDING UPON THE CLIENT'S NEED" and included polygraphs as a possible additional program rule.

[7]The State points to the state-prescribed treatment that includes polygraphs with the rules published in the Texas Administrative Code. 22 TEX. ADMIN. CODE § 810.2(b)(22), Ch. 810 as amended adopted to be effective October 22, 2006, 31 Tex. Reg. 8520. The State notes that the Council on Sex Offender Treatment has published definitions of "Sex Offender Specific Treatment" and "Successful Completion of Sex Offender Specific Treatment," as including, in pertinent part, "completing and passing the sex history polygraph." *Id*. § 810.2(b)(26) &(29). The State also points to the Council's established statewide standards for sex offender treatment including, in pertinent part, that "[e]fforts shall be made to acquire the following information gathered in the assessment process: . . . . (19) sexual history . . .; and (20) sexual offense behavior, including description of offense behaviors, number of victims, gender and age of victims, frequency and duration of abusive sexual contact, victim selection, access, and grooming behaviors, use of threats, degree of force used before, during, and/or after offense, and deviant arousal patterns." Furthermore, the State quotes the Council's "Treatment Standards for Adult Sex Offenders" stating, "Licensees shall adhere to the following standards when providing treatment to an adult sex offender: . . . (17) . . . Sexual history polygraphs shall include all aspects of a client's sexual behaviors and a victim's list that occurred prior to the offense of conviction." *Id.* § 810.64, Ch. 810.

was aware of statutory requirements for sex offender treatment, appellant would be required to comply only with the conditions set forth by the trial court judge in his case. Regardless of the statutory descriptions, a prosecutor could offer a defendant use immunity to ensure that he fully provides a sexual history that includes all sex-offense victims, or the trial court could alter the conditions of community supervision to permit a defendant to invoke his Fifth Amendment right as to victims for which he has never been convicted. We cannot conclude that the mere existence of statutes describing the requirements for sex offender treatment placed appellant on notice that he would have to waive his Fifth Amendment right as a prerequisite for successful completion of his community supervision.

### III. Conclusion

In this case, we decide only that appellant did not forfeit his complaint that his Fifth Amendment rights were violated by his refusal to answer questions during sex-offender counseling and a polygraph examination about sexual-assault victims other than the complainant in this case. Because our decision is limited to the sole determination that appellant did not forfeit his complaint, we do not attempt to answer the State's arguments on the ultimate merits of whether the State could have required him to answer questions by granting use immunity, whether the trial court could have rejected the plea bargain if appellant had refused to waive his Fifth Amendment right, whether appellant forfeited this complaint under the doctrine of estoppel by contract, and whether it would be feasible at this juncture for the trial court to place him on community supervision if he can no longer be managed effectively in light of his refusal to participate in this form of therapy. We reverse and remand this case to the court of appeals for proceedings consistent with this opinion.

Delivered: November 26, 2014

Publish