

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESIS J. PENA, | § | No. 08-14-00038-CR |
| Appellant, | § | Appeal from |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of Dallas County, Texas |
| Appellee. | § | (TC # F-0825108-H) |
| | § | |

# **O P I N I O N**

Jesus J. Pena appeals a judgment adjudicating his guilt of sexual assault and assessing his punishment at imprisonment for a term of five years. We reverse the judgment adjudicating guilt and render judgment denying the State's motion to adjudicate.

## **FACTUAL SUMMARY**

In 2010, Appellant entered a negotiated guilty plea to the sexual assault of his 18-year-old daughter alleged to have been committed on June 3, 2008. At the guilty plea, the prosecutor stated that the plea bargain included an agreement that, in exchange for Appellant's guilty plea, "no additional charges . . . involving [Appellant's daughter] will be filed against [Appellant]." In accordance with the plea bargain, the trial court placed him on deferred adjudication community supervision for a period of ten years.

Conditions (aa) and (bb) required Appellant to do the following:

(aa) Within 45 days from referral, participate in counseling through An Approved Registered Sex Offender Treatment Provider and continue in counseling as required making observable deliberate and diligent effort to comply with all directives and instructions provided by The Registered Sex Offender Treatment Provider or its staff;

(bb) Submit and PASS a clinical polygraph with a court approved polygraph at least once every 12 months or as directed by a therapist or supervision officer.

The State filed a motion to adjudicate on July 10, 2013 alleging that Appellant violated Condition (aa) by failing to participate in counseling through an approved registered sex offender treatment provider and by failing to continue counseling. The motion also alleged that Appellant violated Condition (bb) by failing to submit and pass a clinical polygraph with a court approved polygraph at least once every twelve months or as directed by a therapist or community supervision officer. The motion further alleged that Appellant tested deceptive on three instant offense polygraph exams administered on October 22, 2012, December 2, 2012, and January 24, 2013.[1] At the adjudication hearing, Appellant entered a plea of not true to the violations.

*The Probation Officer's Testimony*

Marissa Garza, an officer with the Dallas County Community Supervision Office, testified at the hearing on the State's motion to adjudicate. Her responsibilities include the supervision of sex offenders, including Appellant. One of the terms of community supervision required Appellant to participate in a registered sex offender treatment program, but Appellant had not complied with this requirement. When asked to explain how he had not complied, Garza

---

[1] The motion also alleged that Appellant violated Condition (h) by failing to pay court costs and fines as ordered by the trial court. The evidence admitted at the adjudication hearing showed that Appellant had paid the delinquent amounts and the trial court did not make any finding with respect to this alleged violation.

responded that Appellant had failed to completely admit his offense in that he would not admit when the abuse started and he denied that he had forcibly committed the sexual assault of his daughter. According to the police report, the victim told police that Appellant began abusing her when she was in elementary school. Appellant had undergone treatment with two different sex offender treatment providers over a course of three years but he refused to admit that the abuse began when his daughter was in elementary school. Garza concluded that Appellant's participation in the sex offender treatment program and his compliance with the program requirements had been unacceptable because he had not admitted the offense and he had failed instant offense polygraphs. The trial court overruled Appellant's objection to the testimony about the polygraph results and gave him a running objection to any polygraph evidence throughout the remainder of the hearing.[2] The following exchange then occurred between the prosecutor and Garza:

> [Prosecutor]: And, in your opinion, in addition to failing the actual polygraph, he has in your conversations with him, directly continued to deny the use of force in the history of sexual abuse with his victim?
>
> [Garza]: Correct.
>
> [Prosecutor]: So what would you say that you're basing your opinion, that he has failed to fully participate in counseling on?
>
> [Garza]: He hasn't completely owned up to his offense. He will not admit to the use of force and will not admit to when the abuse started.
>
> [Prosecutor]: And that's based on not just the polygraphs, but also your interviews with him?

---

[2] Prior to the adjudication hearing, Appellant objected in writing to the State's motion to adjudicate based on his alleged failure to pass the polygraph examinations because polygraph results are inadmissible. Appellant referred to this written objection when he objected at the hearing.

[Garza]: Absolutely.

*The Treatment Provider's Testimony*

Appellant began treatment with Dr. Robert Antonetti in May 2011. He provides the only sex offender treatment program for Spanish-speaking offenders in Dallas. Dr. Antonetti advised Appellant that he would be required to accept all parts of the offense as stated by the victim or he would be required to take a polygraph. Appellant initially denied using force in the commission of the charged offense, but he later admitted the use of force to Dr. Antonetti. He consistently refused, however, to admit that the abuse began when his daughter was in elementary school, and he maintained that his daughter was not telling the truth. At a group therapy session on June 15, 2011, Dr. Antonetti pressed Appellant to admit this allegation, but Appellant asserted his Fifth Amendment privilege and told Dr. Antonetti he did not have anything else to say. Dr. Antonetti recalled that Appellant subsequently fell asleep for a portion of the session. The following week, Appellant arrived fifteen minutes late to group therapy. Dr. Antonetti required Appellant to attend a polygraph examination, but he arrived for the exam with a letter from his attorney asserting his Fifth Amendment right to remain silent and the exam was not performed. Dr. Antonetti subsequently discharged Appellant because he had refused to comply with the assignments he had been given.

Appellant visited another treatment provider for several months, but the trial court required him to return to treatment with a provider who spoke Spanish, and Appellant returned to treatment with Dr. Antonetti in July 2013. Appellant had participated in polygraph examinations with the other treatment provider and Dr. Antonetti reviewed the results with Appellant.

- 4 -

Appellant passed both sexual history polygraphs but he failed three instant offense polygraphs. Appellant explained to Dr. Antonetti that he could not accept his daughter's version of the offense and, as he had done during the beginning of treatment, Appellant once again denied using force. Dr. Antonetti told Appellant that he could not continue in group therapy if he continued to deny "the parts of the offense that he was denying." Dr. Antonetti explained that he was referring to Appellant's denial of using force during the commission of the charged offense and his refusal to admit when the sexual abuse began. Appellant offered to take another polygraph examination but Dr. Antonetti refused.

On July 23, 2013, Dr. Antonetti sent a letter to Appellant's probation officer, Marissa Garza, stating that Appellant's "only option" was to accept the victim's version of the offense. Dr. Antonetti based this decision on the failed polygraph examinations. Appellant did not return to treatment with Dr. Antonetti. At the revocation hearing, Dr. Antonetti offered his opinion that Appellant had failed to participate in the sex offender treatment program and had failed to make observable, deliberate, and diligent efforts to comply with all of the instructions he had been given because he continued to insist that he had not used force in the commission of the charged offense. On cross-examination, Dr. Antonetti admitted that Appellant had taken responsibility for the charged offense both orally and in writing, but he explained on re-direct that Appellant had denied parts of what the police report stated. Dr. Antonetti also admitted during cross-examination that he had told Appellant he would allow him back into the sex offender treatment program only if Appellant accepted everything in the police report and he did not bring any more letters from his lawyer. At the conclusion of the hearing, the trial court found that the State

proved by a preponderance of the evidence that Appellant violated Condition (aa) and made no finding with respect to the other two allegations. The court adjudicated Appellant's guilt and assessed his punishment at imprisonment for a term of five years.

## REVOCATION OF COMMUNITY SUPERVISION

In Issue One, Appellant contends that the trial court abused its discretion by finding he violated the terms and conditions of community supervision because the violation resulted from the invocation of his Fifth Amendment privilege against self-incrimination. Additionally, he complains that the trial court erroneously admitted evidence that Appellant failed three polygraph examinations.

### *Preservation of Error*

Citing the Dallas Court of Appeals' decision on remand in *Dansby v. State*, No. 05-10-00866-CR, 2014 WL 259014 (Tex.App.--Dallas Jan. 22, 2014), the State first contends that the issue raised on appeal is waived because Appellant did not object to Condition (aa) when it was imposed or at any time prior to the adjudication hearing. After the State filed its brief, the Court of Criminal Appeals reversed the Dallas Court of Appeals' decision. *See Dansby v. State*, 448 S.W.3d 441 (Tex.Crim.App. 2014).

It is well established that a defendant who is fairly notified of the conditions of community supervision at a hearing at which he has an opportunity to object forfeits any later complaint about those conditions provided those conditions do not involve a systemic right or prohibition. *Dansby*, 448 S.W.3d at 447. The record before us does not show that Appellant had fair notice he would be required to waive his Fifth Amendment privilege as part of the terms and

conditions of community supervision. Consequently, the issue raised on appeal is not waived. *See Dansby*, 448 S.W.3d at 448-49.

*Standard of Review*

A trial court's decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewed under the same standard as a revocation of regular community supervision. *Cantu v. State*, 339 S.W.3d 688, 691 (Tex.App.--Fort Worth 2011, no pet.). We review a trial court's order revoking community supervision for an abuse of discretion in light of the State's burden of proof. *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex.Crim.App. 2013); *see Rickels v. State*, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006). In a revocation proceeding, the State must prove a violation of a condition of community supervision by a preponderance of the evidence. *See Hacker*, 389 S.W.3d at 864-65; *Cobb v. State*, 851 S.W.2d 871, 873 (Tex.Crim.App. 1993). In this context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision]." *Hacker*, 389 S.W.3d at 865, *quoting Rickels*, 202 S.W.3d at 764. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona v. State*, 665 S.W.2d 492, 494 (Tex.Crim.App. 1984). An abuse of discretion may also be found where the trial court revokes community supervision for an inappropriate reason, such as the probationer's discharge from a sex offender treatment program based on the probationer's failed polygraph examination, *Leonard v. State*, 385 S.W.3d 570, 583 (Tex.Crim.App. 2012), or the probationer's valid invocation of his Fifth Amendment privilege, *Dansby v. State*, 398 S.W.3d 233, 239-40

(Tex.Crim.App. 2013).

*Inadmissibility of Polygraph Results*

The trial court admitted evidence that Appellant failed three instant offense polygraph examinations. One question asked whether Appellant had ever had sexual contact with anyone under the age of seventeen. Another question asked Appellant whether he had sex with the complainant when she was a minor. Appellant's answers to these questions indicated deception. The Court of Criminal Appeals has held for more than sixty years that the results of polygraph examinations are inadmissible over proper objection because the tests are unreliable. *Leonard v. State*, 385 S.W.3d 570, 577 (Tex.Crim.App. 2010)(op. on reh'g). In *Leonard*, the court rejected the State's argument that an expert witness may base his opinion on inadmissible polygraph evidence and inform the court of the basis of his opinion. *Id.*, 385 S.W.3d at 581-82. The court further held that this rule of inadmissibility is not altered because one condition of probation required the probationer to "show no deception" on polygraph examinations. *Id.*, at 582-83. The record before us shows that Appellant timely and specifically objected to the admission of the polygraph evidence. Even though the trial court made no finding on the alleged violation of Condition (bb) which required Appellant to take and pass polygraph examinations, both Garza and Dr. Antonetti utilized the failed polygraph examinations to support their opinions that Appellant had violated Condition (aa). We conclude that the trial court erred by admitting the polygraph evidence over Appellant's objection. This evidence cannot be used to support the trial court's finding that Appellant failed to participate in sex offender treatment or failed to comply with the directives and instructions given to him by the treatment provider.

*Probationer's Fifth Amendment Right*

Under the Fifth Amendment, a person cannot be compelled in any criminal case to be a witness against himself. U.S.CONST. Amend. V. In addition to providing protection from being compelled to testify in a criminal proceeding, the privilege permits a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Chapman v. State*, 115 S.W.3d 1, 5 (Tex.Crim.App. 2003), *quoting Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). The protection from compelled self-incrimination is afforded to probationers. *Dansby v. State*, 398 S.W.3d 233, 239 (Tex.Crim.App. 2013); *Chapman*, 115 S.W.3d at 5-6. Further, the protection is not diminished simply because a person is on probation for a criminal sexual offense. *Chapman*, 115 S.W.3d at 6.

A probationer may be compelled to appear and give testimony about matters relevant to his probationary status, but he cannot be "required . . . to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Dansby*, 398 S.W.3d at 239-40, *quoting Minnesota v. Murphy*, 465 U.S. 420, 436, 104 S.Ct. 1136, 1147, 79 L.Ed.2d 409 (1984). The State may compel a probationer to answer incriminating questions only if it recognizes the answers cannot be used in a criminal proceeding and eliminates the threat of self-incrimination. *See Dansby*, 398 S.W.3d at 240. If the State fails to offer the probationer use immunity, the State cannot penalize him for invoking his Fifth Amendment privilege by revoking his conditional liberty solely on the basis of his refusal to answer questions that would tend to incriminate him. *See Dansby*, 398 S.W.3d at 240; *see also Dansby v. State*, 448 S.W.3d

441, 452 (Tex.Crim.App. 2014)(Cochran, J., concurring opinion)(observing that a judge may require polygraph testing as a condition of probation, but he may not revoke probation based upon a valid invocation of the Fifth Amendment made as a part of polygraph testing, and stating that the solution is for the State to grant full-use immunity for any self-incriminatory statements made by the probationer during the polygraph testing).

*Alleged Violation of Condition (aa)*

Condition (aa) required Appellant to: (1) participate in counseling through an approved registered sex offender treatment provider; and (2) "continue in counseling as required making observable deliberate and diligent effort to comply with all directives and instructions provided by The Registered Sex Offender Treatment Provider or its staff." Both Garza and Dr. Antonetti testified that Appellant violated Condition (aa) because he failed to admit that he began sexually abusing his daughter when she was in elementary school. Further, Dr. Antonetti made Appellant's continued participation in sex offender treatment conditional upon his admission to all of the facts stated in the police report and his waiver of his Fifth Amendment right to remain silent.

Appellant was charged with a single offense of sexually assaulting his eighteen-year-old daughter in 2008. He was not charged with sexually assaulting his daughter on any other occasion, including when she was under the age of seventeen. The plea agreement included the State's agreement to give Appellant immunity from prosecution for any offenses involving Appellant's daughter, but the State did not offer Appellant "full use immunity" in connection with its efforts to compel Appellant to make self-incriminatory statements related to these other

offenses. When a defendant is given full use immunity, nothing he says can be used against him in any future criminal proceeding. *See Dansby*, 448 S.W.3d at 453 & n.7 (Cochran, J., concurring opinion). If the State does not offer full-use immunity, the probationer may always invoke his Fifth Amendment right against self-incrimination, and he may not be penalized for invoking that right. *See Dansby*, 448 S.W.3d at 453 (Cochran, J., concurring opinion).

The supervising probation officer and the treatment provider required Appellant to choose between making self-incriminatory statements that he had committed offenses other than the offense for which he had been convicted or having his community supervision revoked for refusing to participate in sex offender treatment as ordered by the trial court. Dr. Antonetti made it clear to Appellant that he would not be allowed to participate in the sex offender treatment program unless he stopped asserting his Fifth Amendment privilege and admitted that he began sexually abusing the victim when she was in elementary school. Because Appellant was not offered use immunity, his invocation of his Fifth Amendment privilege against self-incrimination and his refusal to make the statements required by Garza and Dr. Antonetti may not be used to revoke his community supervision. *See Dansby*, 398 S.W.3d at 240-41.

The State argues that there is other evidence supporting the trial court's conclusion that Appellant violated Condition (aa) by failing to participate in the sex offender treatment program. More specifically, it points to evidence that Appellant used distorted thinking patterns, accused his daughter of lying, failed to talk during group therapy, fell asleep during one session, and was late for one session. The State does not explain, and we fail to perceive, how the use of distorted thinking patterns constitutes a failure to participate in sex offender treatment. Dr. Antonetti

- 11 -

testified that the goal of treatment is to change the offender's distorted thinking patterns because it would help the individual to not make bad choices again.

The evidence that Appellant accused his daughter of lying is directly related to Appellant's exercise of his Fifth Amendment rights and refusal to admit that he began sexually abusing his daughter when she was in elementary school. As we have already held, this evidence may not be used to support the trial court's conclusion that Appellant violated Condition (aa). Likewise, the evidence that Appellant refused to talk during one group therapy session does not support the revocation order because his refusal to speak during that session is unquestionably related to the assertion of his Fifth Amendment privilege. The record reflects that Appellant fell asleep during the same group therapy session after he exercised his right to remain silent and refused to discuss when the abuse began. He was also late for that session. Appellant was fifteen minutes late for the next session which was also his last group therapy session with Dr. Antonetti.

The State also presented evidence at trial that Appellant failed to admit that he had used force during the commission of the charged sexual assault. Dr. Antonetti testified at the revocation hearing that Appellant had failed to participate in the sex offender treatment program and had failed to make observable, deliberate, and diligent efforts to comply with all of the instructions he had been given because he continued to insist that he had not used force in the commission of the charged offense. With respect to the use of force in the commission of the charged offense, the record reflects that Appellant initially denied using force when he first entered treatment, he later admitted the use of force to Dr. Antonetti, and when he briefly

returned to treatment with Dr. Antonetti in 2013, Appellant again stated he had not used force.

Ordinarily, we would consider whether the evidence that Appellant was late for two sessions, fell asleep during a portion of one of those sessions, and failed to consistently admit he used force during the commission of the charged offense is sufficient to support the trial court's finding that Appellant failed to participate in the sex offender treatment program. After reading the record of the revocation hearing, however, we are struck by the intensity of Dr. Antonetti's insistence that the treatment program required Appellant to admit all of the facts contained in the police report, regardless of whether all of those facts are true, and his disregard, if not outright disdain, for Appellant's invocation of his Fifth Amendment privilege. The record reflects that the reason Dr. Antonetti did not allow Appellant to return to the treatment program is not because he was late for two sessions, fell asleep during one of those sessions, or vacillated with respect to whether he used force in the commission of the charged offense, but solely because he exercised his Fifth Amendment privilege and refused to agree with his daughter's statement that the abuse began when she was in elementary school. Dr. Antonetti made it clear that he would have allowed Appellant to return to the treatment program if he had admitted all of the facts contained in the police report and did not continue to assert his Fifth Amendment rights. Under these circumstances, we conclude that the remaining evidence is not free of the constitutional taint arising from the State's use of Appellant's invocation of his right to remain silent against him, and therefore, it cannot be used to support the trial court's finding that Appellant violated Condition (aa). *See Dansby*, 398 S.W.3d at 240-43. Consequently, the trial court abused its discretion by revoking Appellant's community supervision and adjudicating his guilt. Having

found that the trial court abused its discretion, we sustain Issue One,[3] reverse the judgment adjudicating Appellant's guilt, and render judgment denying the State's motion to adjudicate.


April 27, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)

---

[3] Due to our disposition of Issue One, it is unnecessary to address Issue Two.