

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARIO ERNESTO MARTELL, | § | |
| | | No. 08-18-00180-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. One |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 990D03958) |
| | § | |

**O P I N I O N**

This is an appeal from a judgment adjudicating guilt following placement on community supervision under deferred adjudication. After the State filed a motion to adjudicate guilt based on reporting violations, the trial court held a contested hearing in which Appellant Mario Ernesto Martell asserted the State had failed to exercise due diligence in executing the capias.[1] Following the hearing, the trial court adjudicated guilt and sentenced Martell to ten years' confinement in the Texas Department of Criminal Justice, which the court then suspended, and he was placed on ten years' community supervision. The trial court also ordered Martell to pay a $1,000 fine and court costs. By two issues, Martell contends that the trial court erred in rejecting his affirmative defense

---

[1] *See* TEX. CODE CRIM.PROC.ANN. art. 42A.108.

of lack of due diligence. We reverse the revocation order and remand the cause to the trial court.

## I. BACKGROUND

### A. Martell's Community Supervision

In October 1999, Martell pleaded guilty to unlawful possession of marihuana in an amount of greater than five pounds but less than fifty pounds, and pursuant to a plea bargain with the State, he was sentenced to four years' deferred-adjudication community supervision. Under the terms and conditions of his community supervision, the trial court explicitly permitted Martell to live in Ciudad Juárez, Mexico, and he listed his address as "Juan Escutia # 1257." Yet, the terms also required that Martell report to his supervision officer, Carlos Estrello, at the offices of the West Texas Community Supervision and Corrections Department (the Department) in El Paso, Texas.

Only a few months after his probation began, Martell stopped reporting. Eventually, in March 2002, the State filed a motion to adjudicate guilt alleging Martell failed to report from December 1999 through December 2001, among other violations not at issue in this appeal, and the trial court issued a capias for his arrest that same day. However, Martell was not arrested until August 2017. On his paperwork for a court-appointed attorney following this arrest, he listed his address as being in El Paso and indicated he had lived there for the preceding seven years.

### B. The Revocation Hearing

A contested revocation hearing was held at which the sole witness was Adrian Aguirre, a court liaison officer with the Department, who brought the complete supervision file for Martell's case. Aguirre testified that the file contained the day-to-day notes taken by the assigned supervision officer, Estrello, for the case but that Estrello no longer worked for the Department. Although Aguirre had been employed by the Department for nearly 24 years, he was never assigned to

2

Martell's case.

Based on the information in the file, Martell reported to Estrello only a few times after his community supervision began before Martell stopped reporting in December 1999. As Martell's address in Mexico at Juan Escutia was listed by him as both his home and employment address, the Department sent a letter to that address, reminding of his obligation to report, in January 2000 and again in February 2000. Also in February, the Department placed a telephone call to a phone number in Mexico that Martell provided. However, a woman named Maribel, who stated that she was a friend of the family, answered the call, and Estrello was unable to speak to Martell. After these unfruitful efforts to contact Martell, the Department considered him to be an absconder and submitted violation notices to the District Attorney's Office for a prosecutor to seek revocation of Martell's community supervision.

Based on Aguirre's testimony, it is undisputed in this appeal that Martell's supervision file did not reflect that any attempts were made by the Department, the Sheriff's Office, or any other law-enforcement agency to contact Martell in person at his address in Mexico. Yet, after both sides ended their questioning, the trial court asked Aguirre, "as a probation officer, whoever was assigned to him, you would not be able to go to Juárez to do any home visits or anything like that?" Aguirre responded, "No, Judge."

At the conclusion of the hearing, the State argued that it satisfied its burden to prove Martell violated his community-supervision terms by failing to report and that Martell failed his burden to produce evidence making the due-diligence affirmative defense applicable to the case. In addition, the State argued that the evidence showed the Department simply "had no jurisdiction in Mexico," and the State urged the trial court not to give Martell a windfall for violating his supervision terms

3

while residing in a foreign jurisdiction where the Department and law-enforcement officers would not be able to contact him in person. In contrast, Martell argued that the evidence showed there was no in-person attempt to contact Martell at his last-known address in Mexico and that the due-diligence affirmative defense therefore applied to the case. Martell urged the trial court to find that the State did not exercise the required due diligence and to deny revocation based on the plain language of the due-diligence affirmative-defense statute requiring some supervision officer, sheriff's deputy, or other peace officer to attempt in-person contact with him at his address in Mexico.

After hearing argument, the trial court announced its ruling on the record that the failure-to-report allegations in the State's motion to adjudicate were true:

> [Trial court]: We had had a contested revo and there had been evidence, I guess, presented. And then what had happened is that both sides submitted -- I guess the whole issue was on whether Mr. Martell had received -- there had been efforts from the probation department to reassert supervision and whether he had been contacted.
>
> . . .
>
> [Trial court]: And then so I was provided with case law. I don't think -- I don't think I signed an order. So I want to make sure that I put it on record that I did consider the arguments on the due diligence. And that in chambers, I did tell both sides that the fact that Mr. Martell had been given permission to reside in Mexico, that I didn't feel that it was in the interest of justice to allow him to use that also as a reason to bring up the due diligence was not done like it would have been done if he had been residing here in El Paso County.
>
> So at that point, I asked that this hearing be set so that then I could -- we can determine, I guess, how we were going to move forward with the case.
>
> So I did find that the allegations in the motion to adjudicate guilt were true, that he didn't report during that -- this period of time in violation of his probation.

The trial court adjudicated Martell guilty, sentenced him to ten years' regular community

4

supervision, and ordered that he remain in El Paso for its duration. Martell then filed his notice of appeal from the trial court's judgment adjudicating guilt.

## II. ISSUES ON APPEAL

Martell asserts two issues in his appeal from the trial court's judgment. In Martell's first issue, he argues that the trial court erred in determining that he was not entitled to the due-diligence affirmative defense because he resided in Mexico and that the court thereby "fail[ed] to properly consider Martell's affirmative defense of due diligence." In Martell's second issue, he argues that, even if the trial court considered the availability of the defense, the court erred in revoking his community supervision because he proved that the State failed to exhibit due diligence where "[t]he uncontroverted evidence adduced shows that no attempt was ever made to contact Martell in person at his last known residence address or last known place of employment by any supervision officer, peace officer, or any other officer . . . ."

In response to Martell's first issue, the State argues, "the record shows that the court expressly stated that it had considered the due-diligence issue, and the court merely determined and ruled that Martell had not met his burden of proving the affirmative defense." In response to Martell's second issue, the State argues, "Martell has failed in his burden of showing that the evidence was legally or factually insufficient to support the trial court's rejection of the affirmative defense." Regarding Martell's second issue, the State specifically argues that "because neither the probation department nor any other local law-enforcement officer had the jurisdictional authority to cross the international border in an attempt to make in-person contact with Martell at his listed and last-known address in Mexico, any such attempt at in-person contact would have been legally and factually impossible, and therefore futile[,]" and that, as a consequence, the Department's

attempts to contact Martell by letter and phone call sufficed to show due diligence "because the law does not require the doing or attempting of a futile act[.]"

In our resolution of this appeal, we address Martell's second issue first, and since we find it dispositive of the appeal, we need not address Martell's first issue.[2]  *See* TEX.R.APP.P. 47.1.

### III. DISCUSSION

**Issue Two: Did the Due-Diligence Affirmative Defense Preclude Revocation?**

*1.      Standard of Review*

A trial court's decision to proceed to an adjudication of guilt and revoke deferred-adjudication community supervision is reviewed under the same standard as a revocation of regular community supervision.  *Pena v. State*, 508 S.W.3d 599, 604 (Tex. App. – El Paso 2016, pet. ref'd).  We review a trial court's order revoking community supervision for an abuse of discretion in light of the State's burden of proof.  *Id*.

In a revocation proceeding, the State must prove only a single violation of a condition of community supervision by a preponderance of the evidence.  *Id*.  In this context, "a preponderance of the evidence" means that greater weight of the credible evidence which would create a reasonable belief that the defendant violated a condition of his community supervision.  *Id*.  If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision.  *Id*.  Additionally, an abuse of discretion may occur where the trial court revokes

---

[2] We set this cause for submission on oral argument, and to the extent that either party presented new legal theories or requests for relief for the first time at oral argument, we decline to address those newly raised matters.  *See* TEX. R. APP. P. 39.2 ("Oral argument should emphasize and clarify the written arguments in the briefs."); *French v. Gill*, 206 S.W.3d 737, 743 (Tex. App. – Texarkana 2006, no pet.) ("An issue or counter-issue may not be raised for the first time at oral argument unless the issue has been first presented in the parties' written brief."); *accord Nanos v. State*, No. 08-06-00173-CR, 2007 WL 2052180, at *3 n.1 (Tex. App. – El Paso July 19, 2007, no pet.) (not designated for publication).

community supervision for an inappropriate reason. *Id.*

This standard of review is modified when a Court reviews an attack on the sufficiency of the evidence supporting the trial court's rejection of the due-diligence affirmative defense. Both the legal- and factual-sufficiency standards can apply to a review of a fact finder's rejection of an affirmative defense. *See Matlock v. State*, 392 S.W.3d 662, 667-71 (Tex. Crim. App. 2013). When conducting a legal sufficiency review concerning an issue on which the defendant had the burden of proof, we view the evidence in a light most favorable to the trial court's ruling and reverse only if the evidence conclusively establishes the opposite. *See id.* at 669. And in reviewing the factual sufficiency of such an issue, we review all of the evidence in a neutral light and determine whether the ruling is so against the great weight and preponderance of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *See id.* at 671.

2.     *The Due-Diligence Affirmative Defense*

In 2003, the Legislature added section 24 to article 42.12 of the Texas Code of Criminal Procedure (the then-existing community-supervision statutes) and codified a due-diligence affirmative defense to revocation of a defendant's community supervision. *See Garcia v. State*, 387 S.W.3d 20, 23 (Tex. Crim. App. 2012). And in 2017, this statutory due-diligence affirmative defense was recodified, without substantive change, into the new community-supervision statutes relocated in Chapter 42A of the Texas Code of Criminal Procedure. *See Enriquez v. State*, No. 08-15-00324-CR, 2018 WL 2328225, at \*2 n.1 (Tex. App. – El Paso May 23, 2018, no pet.) (not designated for publication).

Now, article 42A.109 provides the following due-diligence affirmative defense to the revocation of deferred-adjudication community supervision:

For the purposes of a hearing under Article 42A.108 [to determine whether a condition of community supervision was violated], it is an affirmative defense to revocation for an alleged violation based on a failure to report to a supervision officer as directed or to remain within a specified place that no supervision officer, peace officer, or other officer with the power of arrest under a warrant issued by a judge for that alleged violation contacted or attempted to contact the defendant in person at the defendant's last known residence address or last known employment address, as reflected in the files of the department serving the county in which the order of deferred adjudication community supervision was entered.

TEX. CODE CRIM. PROC. ANN. art. 42A.109. As an affirmative defense, the burden of proving its applicability is on the defendant. *Garcia*, 387 S.W.3d at 23.

In *Garcia*, the Court of Criminal Appeals observed that, in codifying the due-diligence affirmative defense, the Legislature made the defense more favorable to the State than the common-law version in multiple ways. *See Garcia*, 387 S.W.3d at 23. So observing, the Court wrote, "[i]t is plain that the Legislature intended to eliminate" certain common-law aspects of the defense in enacting different, specific provisions for the newly-codified defense, and the Court noted that "the Legislature apparently rejected the policy arguments" for those aspects not incorporated into the newly-codified defense. *See id*. at 24-25. The Court expressly concluded, "[w]e may not override the Legislature's intent in favor of countervailing policy considerations." *Id*. at 25. And as the Court of Criminal Appeals explained in *State v. Ross*, it is the duty of all Courts to refrain from intruding on the legislative realm:

Courts have no power to legislate. It is the court's duty to observe, not to disregard statutory provisions. Courts can neither ignore nor emasculate the statutes. Further, courts have no power to create an exception to a statute, nor do they have power to add to or take from legislative pains, penalties and remedies. . . . It is for the Legislature, not the courts, to remedy defects or [ ] deficiencies in the laws, and to give relief from unjust and unwise legislation.

*State v. Ross*, 953 S.W.2d 748, 751 n.4 (Tex. Crim. App. 1997).

3.    *Application*

8

Here, the record established there were no attempts to contact Martell in person at his address in Mexico. Both parties recognize that this would normally trigger the application of the due-diligence affirmative defense. But the State nonetheless argues, under the unique facts established in our record, that Martell still failed his burden of proving the due-diligence affirmative defense, and the State bases its argument on the following two facets of this case: (1) Aguirre testified that no supervision officer from the Department would have been able to go to Mexico to do a home visit; and (2) in light of that, the Department performed what diligence it could, namely, sending letters to Martell's address and placing a telephone call to his phone number.

The State relies on *Hill v. State* from the Court of Criminal Appeals and *Ohio v. Roberts* from the United States Supreme Court for its argument that the law does not require the doing of a futile act and thus the "factual and legal impossibility" of the Department to make in-person contact with Martell at his Mexico address, based on the Department's lack of "jurisdictional authority" to do so, did not preclude the State from showing due diligence in light of the Department's other efforts – sending letters and placing a phone call. *See Hill v. State*, 90 S.W.3d 308, 316 (Tex. Crim. App. 2002) ("The law does not require a futile act.") (citing *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). In *Hill*, the Court addressed an inapposite situation about whether a defendant met his burden of proving that his subsequent prosecution was barred by double jeopardy and whether an abatement was permissible to supplement the record with the trial court's reason for granting a mistrial during the defendant's first prosecution. *See Hill*, 90 S.W.3d at 311. After determining that the trial court's grant of a mistrial was error and that there was nothing the State could establish at a post-abatement hearing

9

to demonstrate the contrary, the Court, in a summary conclusion section excluded from the body of the opinion, briefly stated, "there could not be manifest necessity for a mistrial under these facts. Therefore, we need not decide whether abatement is permissible, because even if it is, it would not be a useful tool in this case. The law does not require a futile act." *Id*. at 315-16.

This phrase used in *Hill* onto which the State latches – "[t]he law does not require a futile act" – was drawn, in turn, from the United States Supreme Court's decision in *Ohio v. Roberts*. *See Hill*, 90 S.W.3d at 316 n.39 (where the Court of Criminal Appeals cites to *Ohio v. Roberts* for its articulation of the phrase, "[t]he law does not require a futile act."); *see also Roberts*, 448 U.S. at 74. While the Supreme Court did state, "[t]he law does not require the doing of a futile act[,]" the Supreme Court used that phrase in the context of a reasonableness inquiry into whether the prosecution made a good-faith effort to obtain a witness's presence for trial to establish unavailability under the Confrontation Clause. *See Roberts*, 448 U.S. at 74.

In the criminal jurisprudence of Texas, this notion that the law does not require a futile act, as derived from *Roberts* by *Hill*, has been applied almost solely in the context in which it arose in the United States Supreme Court, namely, the totality-of-the-circumstances reasonableness inquiry for prosecutorial good-faith in seeking an unavailable witness. *See, e.g.*, *Reed v. State*, 312 S.W.3d 682, 685-86 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd); *Loun v. State*, 273 S.W.3d 406, 420 (Tex. App. – Texarkana 2008, no pet.); *Otero-Miranda v. State*, 746 S.W.2d 352, 354 (Tex. App. – Amarillo 1988, pet, ref'd). That status quo has also been the same for this Court. *See Reyes v. State*, 845 S.W.2d 328, 332 (Tex. App. – El Paso 1992, no pet.). However, we do observe that the concept that the law does not require a futile act has arisen in other contexts, such as the examination of defense counsel's performance for an ineffective-assistance claim and the

10

examination of whether performance of a futile act under a contract was required. *See Thel Chok Ngung v. State*, No. 07-13-00315-CR, 2014 WL 2191999, at *4 (Tex. App. – Amarillo May 23, 2014, pet. ref'd) (mem. op., not designated for publication) ("We first observe that it has become a well-established principle that a reasonably competent counsel need not perform a useless or futile act."); *Duncan v. Woodlawn Mfg., Ltd.*, 479 S.W.3d 886, 895-98 (Tex. App. – El Paso 2015, no pet.) (where this Court observed, in the context of an argument as to whether a party was required to follow a notice-and-cure provision of a contract, that "Texas law does not require the performance of a futile act."). Nonetheless, we ultimately see the viability of such a concept as having roots in analyses of totality-of-the-circumstances claims where all the circumstances are taken into account in a legal determination. We do not believe that the concept can apply to a situation where the Legislature has chosen to specifically circumscribe the limits of a Court's analysis on the issue of an affirmative defense like the one at issue here.

And in fact, the Court of Criminal Appeals has expressly cautioned against overriding the Legislature's intended application of the due-diligence affirmative defense, as evidenced by the Legislature's careful elimination and provision of certain aspects for the statutory defense when adopting it from its common-law origins. *See Garcia*, 387 S.W.3d at 23-25. Simply, the State is asking us to carve out an exception to the statutory due-diligence affirmative defense based on case-specific factual concerns, and it is this action that we cannot do. *See Ross*, 953 S.W.2d at 751 n.4 (observing that Courts have no power to legislate and create an exception to a statute).

Accordingly, this Court must follow the plain dictates of the statutory due-diligence affirmative defense here. Based on the facts established at the revocation hearing, it is undisputed that no supervision officer, peace officer, or other officer attempted in-person contact with Martell

11

at the address used for both his residence and employment, and Martell satisfied his burden of proving the due-diligence affirmative defense. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.109. No record evidence exists to the contrary. Therefore, the evidence was both legally and factually insufficient to support the trial court's rejection of the due-diligence affirmative defense. *See Matlock*, 392 S.W.3d at 669, 671. And the trial court thus abused its discretion in proceeding to an adjudication of guilt and in revoking Martell's deferred-adjudication community supervision. *See Pena*, 508 S.W.3d at 604.

We sustain Martell's second issue presented for review, and since our resolution on this issue is dispositive of his appeal, we need not consider his first issue presented for review.

## IV. CONCLUSION

We reverse the trial court's judgment adjudicating Martell's guilt and remand the cause to the trial court with instructions to dismiss the motion to adjudicate.


GINA M. PALAFOX, Justice

November 20, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Publish)

12