**Affirmed and Opinion filed January 14, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00038-CR

## FREDERICK ANTHONY MITCHELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1333266**

## OPINION

Appellant pleaded guilty to promotion of child pornography. The trial court deferred an adjudication of guilt and placed appellant on community supervision for a period of ten years. As a condition of his community supervision, appellant was ordered to submit to a program of psychological and physiological assessment upon the direction of his community supervision officer. According to the terms of the trial court's order, this program may specifically include polygraph and plethysmograph examinations. Appellant objected to these examinations as

unreasonable conditions of community supervision. On appeal, our review is limited to deciding whether the trial court abused its discretion by imposing such conditions. Finding no abuse of discretion, we affirm the judgment of the trial court.

## GOVERNING LAW

The trial court may impose "any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." Tex. Code Crim. Proc. art. 42.12, § 11(a). We afford the trial court wide discretion in selecting the terms and conditions of community supervision. *See Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006); *Tamez v. State*, 534 S.W.2d 686, 691 (Tex. Crim. App. 1976). Absent a clear abuse of that discretion, the trial court's judgment must be upheld. *See Briseño v. State*, 293 S.W.3d 644, 647 (Tex. App.—San Antonio 2009, no pet.); *Belt v. State*, 127 S.W.3d 277, 280 (Tex. App.—Fort Worth 2004, no pet.).

The trial court has no discretion to impose an "invalid" condition of community supervision. *See Barton v. State*, 21 S.W.3d 287, 289 (Tex. Crim. App. 2000). There are several reasons a condition may be invalid. A condition is invalid, for instance, if the trial court lacked the authority to impose it. *See, e.g.*, *Gutierrez v. State*, 380 S.W.3d 167, 176–77 (Tex. Crim. App. 2012) (condition violated both state and federal constitutions); *Ex parte Pena*, 739 S.W.2d 50, 51 (Tex. Crim. App. 1987) (trial court failed to make a necessary finding before imposing the condition). A condition may also be invalid if it has all three of the following characteristics: (1) it has no relationship to the crime, (2) it relates to conduct that is not in itself criminal, and (3) it forbids or requires conduct that is not reasonably related to the future criminality of the defendant or does not serve the statutory ends of community supervision. *See Marcum v. State*, 983 S.W.2d 762, 768 (Tex.

2

App.—Houston [14th Dist.] 1998, pet. ref'd). Generally, if a trial court imposes an invalid condition, the proper remedy is to reform the judgment by deleting the condition. *See Ex parte Gingell*, 842 S.W.2d 284, 285 (Tex. Crim. App. 1992); *Milligan v. State*, 465 S.W.2d 157, 159 (Tex. Crim. App. 1971).

## PRESUMPTION OF REASONABLENESS

The legislature has prescribed a nonexclusive list of valid conditions of community supervision. *See* Tex. Code Crim. Proc. art. 42.12, § 11(a). Currently, the list consists of twenty-four separate conditions, but polygraph and plethysmograph examinations are not enumerated among them. Despite this omission, the examinations are addressed elsewhere in the code of criminal procedure in a manner that evidences their legislative endorsement. For example, in section 21 of Article 42.12, the legislature specifically provided that a trial court may not revoke a defendant's community supervision if the only evidence in support of the revocation consists of "the uncorroborated results of a polygraph examination." *See id.* art. 42.12, § 21(c); *see also id.* art. 42.12, § 5(b) (proscribing the same action in a hearing to adjudicate guilt). If the legislature had wholly intended to reject polygraph examinations from the scope of permissible conditions, it could have said so directly, as it has done with other tested conditions. *See, e.g.*, *id.* art. 42.12, § 11(f) (expressly prohibiting a trial court from requiring a defendant to undergo an orchiectomy as a condition of community supervision). Because the legislature has instead qualified the types of polygraph results a trial court may consider, we conclude that the legislature has implicitly sanctioned such examinations as permissible.

Similarly, in Section 11 of Article 42.12, the legislature provided that a trial court may require a "sex offender as a condition of community supervision to submit to treatment, specialized supervision, or rehabilitation according to offense-

specific standards of practice adopted by the Council on Sex Offender Treatment." *See id.* art. 42.12, § 11(i); *see also id.* art. 42.12, § 13B(a)(2) (providing that defendants who committed sexual offenses against children may be ordered to attend similar types of counseling sessions). Since 2006, the Council has adopted a set of standards for conducting both polygraph and plethysmograph examinations on adult sex offenders. *See* 22 Tex. Admin. Code § 810.64(d)(17)–(18); *see also* 31 Tex. Reg. 8520, 8556 (Oct. 13, 2006). Because the legislature has reenacted Article 42.12 since the publication of these standards, we must presume that the legislature has acquiesced in the Council's adoption of polygraph and plethysmograph testing as acceptable tools in sex offender treatment. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004) (the legislature is presumed to have adopted agency interpretations of a statute when the legislature reenacts the statute without substantial change); Act approved June 14, 2013, 83d Leg., R.S., ch. 745, § 1, 2013 Tex. Gen. Laws 1873, 1873–74 (reenacting Article 42.12, Section 11 without amending subsection (i)). Because we must further presume that the legislature enacts every statute with the intent to achieve a just and reasonable result, we conclude that these examinations are presumptively reasonable conditions of community supervision. *See* Tex. Gov't Code § 311.021; *see also* Tex. Health & Safety Code § 841.083 (providing that a treatment plan for a person civilly committed as a sexually violent predator "may include the monitoring of the person with a polygraph or plethysmograph"). We now consider whether appellant has carried his burden of establishing that these conditions are unreasonable as applied to him.

**POLYGRAPH**

This court has previously held that a trial court does not abuse its discretion by requiring a defendant to submit to a polygraph examination as a condition of community supervision. *See Ex parte Renfro*, 999 S.W.2d 557, 560–61 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). In *Renfro*, we concluded that a polygraph could assist counselors with treating, planning, and monitoring the defendant's rehabilitation. *Id.* at 560. So long as the polygraph examination was being used as an investigative or diagnostic tool, we held that the condition was reasonable and advanced the purposes of community supervision. *Id.* at 561. We rejected the defendant's argument that the condition was unreasonable because the results of such testing were unreliable. *Id.* We stated that reliability was an evidentiary standard, which did not preclude the use of such tests for investigative purposes. *Id.* We also rejected the defendant's argument that the condition violated his privilege against self-incrimination, stating that the privilege is not self-executing and that it must be invoked to be effective. *Id.*

Appellant argues that we should revisit *Renfro* because of *Leonard v. State*, 385 S.W.3d 570 (Tex. Crim. App. 2012). In *Leonard*, the court of criminal appeals held that a trial court abuses its discretion by admitting expert testimony that relies entirely on inadmissible polygraph results. *Id.* at 582. The court explained that because polygraphs are untrustworthy, an expert cannot "reasonably rel[y] upon" them as the exclusive basis for his opinion under the standard set forth in Rule 703 of the Texas Rules of Evidence. *Id.* The court of criminal appeals did not consider whether requiring a defendant to submit to a polygraph examination in the first instance was a reasonable condition of community supervision. In fact, the court specifically reserved that issue for another case. *Id.* at 583.

5

The reasoning in *Leonard* does not undermine our holding in *Renfro*. Consistent with *Leonard*, we stated in our previous opinion that "the existence and results of a polygraph examination are inadmissible for all purposes." *See Renfro*, 999 S.W.2d at 561 (citing *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990)). We clarified that this was a rule of evidence, though, and we implicitly held that the reliability of polygraph results did not impact the separate question of whether polygraph examinations served the statutory purposes of community supervision. *See id.*; *accord United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) ("[P]olygraph results are inadmissible as evidence. But that does not much bear on the therapeutic value of the tool . . . ."). No part of *Leonard* explicitly or implicitly disturbs that central holding. We reaffirm today that polygraph examinations are reasonable conditions of community supervision if used to assist in treatment, planning, and case monitoring. *Cf. Leonard*, 385 S.W.3d at 582–83 (suggesting that drug and alcohol testing is a reasonable condition of community supervision because "the testing is a means to an end, not an end to itself"); *see also* Tex. Code Crim. Proc. art. 42.12, § 11(a) (trial court may impose any reasonable condition designed to "rehabilitate" the defendant).

Appellant contends that the condition is still unreasonable because it requires him to either submit to an examination or assert his Fifth Amendment right to remain silent. Appellant contends that this choice is unacceptable because invoking the privilege against self-incrimination is likely to invite additional scrutiny or motivate the State to revoke or adjudicate for a different reason. But, under well-established law, a defendant cannot be penalized by asserting his Fifth Amendment rights. In *Dansby v. State*, the court of criminal appeals held that a trial court may not revoke a defendant's community supervision because he refused to incriminate himself during the course of a sexual history polygraph or

6

sex offender group therapy session. 398 S.W.3d 233, 240–41 (Tex. Crim. App. 2013). The court held that while a defendant may be compelled "to appear and give testimony about matters relevant to his probationary status," he cannot be required "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Id.* at 240 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 436 (1984)). The court further emphasized that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognized that the required answers may not be used in a criminal proceeding and thus eliminate the threat of incrimination." *Id.* Accordingly, appellant's exercise of his Fifth Amendment rights cannot be the "deciding factor" in his discharge from treatment or in the revocation of his community supervision. *Id.* at 241.

While a well-advised probationer might always refuse to answer any potentially incriminating questions, thus limiting the usefulness of the test, this does not mean that the condition is unreasonable. The State can make the test more useful through an offer of immunity. *Id.* at 240.

Appellant finally argues that the polygraph condition is unreasonable because the record does not affirmatively establish that the condition is necessary. Appellant relies exclusively on the reasoning in *United States v. Weber*, 451 F.3d 552 (9th Cir. 2006). In *Weber*, the Ninth Circuit held that the federal government must justify a condition of supervised release because, under federal law, Congress has specified that the condition must involve "no greater deprivation of liberty than is reasonably necessary." *See id.* at 558 (citing 18 U.S.C. § 3583). We conclude that *Weber* is distinguishable because the statutory framework in this case requires no similar showing. Under Texas law, requiring the defendant to submit to a polygraph examination is a presumptively reasonable condition of community

supervision, and appellant has proffered no evidence or argument to overcome that presumption.

## PLETHYSMOGRAPH

A plethysmograph is a device that measures changes in volume. It is most commonly used to detect fluctuations in the amount of air or blood coursing through a bodily organ. During sex offender treatment, counselors may employ a penile plethysmograph to measure a person's erectile responses to visual and auditory stimuli. The examination requires procedures that some courts have described as "intrusive" and "especially unpleasant and offensive." *See United States v. McLaurin*, 731 F.3d 258, 263 (2d Cir. 2013); *Berthiaume v. Caron*, 142 F.3d 12, 16 (1st Cir. 1998).

As with the polygraph, the reliability of penile plethysmograph testing has been severely questioned. *See Weber*, 451 F.3d at 564. The examination is susceptible to user manipulation, as test subjects have been known to "significantly inhibit their arousal by using mental activities to distract themselves." *See id.* (quoting W.L. Marshall & Yolanda M. Fernandez, *Phallometric Testing with Sexual Offenders: Limits to Its Value*, 20 Clinical Psychol. Rev. 807, 810 (2000)). The test has also been found to suffer from a lack of "uniform administration and scoring guidelines." *See id.* at 565 (quoting Walter T. Simon & Peter G.W. Schouten, *The Plethysmograph Reconsidered: Comments on Barker and Howell*, 21 Bull. Am. Acad. Psychiatry & L. 505, 510 (1993)). This problem is compounded by reports indicating that some clinicians who administer the test lack the requisite training. *See id.* (citing D. Richard Laws, *Penile Plethysmography: Will We Ever Get it Right?*, *in* Sexual Deviance: Issues and Controversies 82, 87 (Tony Ward et al. eds., 2003)). Because there are no accepted standards in the scientific community, many courts have held that the results of plethysmograph

examinations are inadmissible as evidence. *See, e.g.*, *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000); *Gentry v. Georgia*, 443 S.E.2d 667, 669 (Ga. App. 1994); *see also Billips v. Virginia*, 652 S.E.2d 99, 102 (Va. 2007) (the plethysmograph evidence was inadmissible because it lacked the necessary foundation); *North Carolina v. Spencer*, 459 S.E.2d 812, 667–68 (N.C. App. 1995) (trial court did not abuse its discretion by excluding such evidence because it is unreliable); *In re A.V.*, 849 S.W.2d 393, 399 (Tex. App.—Fort Worth 1993, no writ) (the record did not establish the reliability of the penile plethysmograph).

Appellant argues that the plethysmograph examination is an unreasonable condition of community supervision because it is unreliable and impermissibly invasive. Appellant did not assert a trial objection on the basis of invasiveness. Rather, he objected that the condition was unreasonable "for the reasons stated in *Leonard*." Because the analysis in *Leonard* was limited to questions of admissibility and reliability—and in regards to polygraph examinations, specifically—we do not consider appellant's challenge to the invasiveness of the plethysmograph examination. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (argument on appeal must comport with objection at trial); *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999) (a defendant must object to a condition of community supervision to preserve error). Liberally construing appellant's trial objection, we limit our review to considering only whether the condition is unreasonable because the examination is unreliable.

Neither appellant nor the State presented the trial court with any evidence concerning the reliability of plethysmograph results. Although we have quoted from cases from other jurisdictions that have found the test to be unreliable, this case does not require that we hold that the results are unreliable under Texas law.

We will presume, for the purposes of this opinion, that the test would fail the reliability standard.

However, reliability is an evidentiary standard, and a test's unfitness as evidence says nothing about its fitness for therapy, monitoring, or investigation. Despite the test's criticisms from some courts of appeals, there are courts in other jurisdictions that have recognized that plethysmograph examinations can be useful in the treatment of sex offenders. *See Weber*, 451 F.3d at 565–66; *In re Commitment of Sandry*, 857 N.E.2d 295, 316 (Ill. App. Ct. 2006); *United States v. Dotson*, 324 F.3d 256, 261 (4th Cir. 2003); *Pool v. McKune*, 987 P.2d 1073, 1079–80 (Kan. 1999); *Berthiaume*, 142 F.3d at 17; *Washington v. Riles*, 957 P.2d 655, 663–64 (Wash. 1998); *Walrath v. United States*, 830 F. Supp. 444, 447 (N.D. Ill. 1993). According to these courts, plethysmograph examinations have utility in identifying a person's deviant sexual arousal and with monitoring the effectiveness of the counselor's treatment. *See Weber*, 451 F.3d at 565–66. In Texas, the Council on Sex Offender Treatment has specifically found that plethysmograph examinations may improve the accuracy of sexual interest assessments when combined with active surveillance, collateral verifications, and self-reporting. *See* 22 Tex. Admin. Code § 810.64(d)(17). The Council has even recommended the use of the polygraph when the test subject is suspected of engaging in suppression behaviors during the plethysmograph examination. *See id.* To the extent these procedures are useful as methods of treatment, we cannot say that they are unrelated to the rehabilitation of persons, such as appellant, who have pleaded guilty to crimes involving deviant sexual interests. Appellant has certainly offered no evidence suggesting that these procedures are incapable of assisting in his recovery.

We express no opinion on whether the trial court could revoke appellant's community supervision or proceed to an adjudication of guilt due to his "failing" the plethysmograph, or whether, as in *Dansby*, the court could do the same because appellant was discharged from sex offender treatment for "failing" the plethysmograph. These issues can still be litigated in a hearing on a motion to revoke or adjudicate.

## CONCLUSION

Many courts have determined that the results of polygraph and plethysmograph examinations are unreliable as items of evidence, but these decisions do not control the outcome in this case. The question here is whether the conditions "have a reasonable relationship to the treatment of the accused." *See Tamez*, 534 S.W.2d at 691. With respect to the treatment of sex offenders, the legislature has already determined that both polygraph and plethysmograph examinations offer some value at the diagnostic level. Appellant has wholly failed to rebut the presumption that requiring him to submit to these examinations is a reasonable condition of his community supervision. We overrule appellant's sole issue and affirm the judgment of the trial court.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Donovan, and Brown.
Publish — Tex. R. App. P. 47.2(b).

11