**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00287-CR**
_____

**RICKIE WAYNE SELBY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CR25185**

**OPINION**

Appellant Rickie Wayne Selby appeals the trial court's denial of his motion for new trial, in which he alleged, among other issues, that his pleas of "true" during a proceeding to revoke his community supervision were involuntary and made as a result of ineffective assistance of counsel. Because we conclude that Selby's trial counsel's performance fell below an objective standard of reasonableness and prejudiced his defense, we reverse the trial court's order denying Selby a new trial and remand for a new revocation hearing.

1

BACKGROUND

Selby pleaded guilty to aggravated sexual assault of a child, a first-degree felony. The trial court deferred an adjudication of guilt and placed Selby on community supervision for a period of ten years. As a condition of his community supervision, Selby was ordered to "submit to polygraph evaluations as instructed by the sex offender therapist or community supervision officer, who shall designate the polygraph examiner to be utilized." During the plea hearing, Selby represented to the trial court that he had reviewed the paperwork concerning his plea agreement with his attorney and understood the terms, which included the sex offender registration admonishments and the additional terms and conditions of his community supervision. Selby's attorney also indicated that he had talked with Selby on numerous occasions about the various aspects of the plea agreement. During the hearing, the trial judge specifically asked whether the sex offender conditions of Selby's community supervision included polygraph testing, and the prosecutor indicated that Selby was to undergo a polygraph examination every six months. Selby's counsel agreed that the plea agreement included a polygraph examination every six months. At that point, Selby did not object to the polygraph examinations as being an unreasonable condition of his community supervision.

Subsequently, the State filed a motion to revoke Selby's unadjudicated community supervision alleging that Selby had violated the conditions of his community supervision by viewing or possessing sexually stimulating or sexually oriented materials and by having contact with a minor. Selby pleaded "true" to both violations, and the trial court found that Selby had violated the conditions of his community supervision. After conducting a punishment hearing, the trial court sentenced Selby to a term of ninety-nine years in prison.

With new counsel, Selby moved for a new trial alleging that, among other things, the State did not file a valid motion to revoke prior to the expiration of his community supervision, a valid capias had not issued prior to the expiration of this period, the State's motion to revoke was based on inadmissible polygraph evidence, he had been placed in a "classic penalty" situation whereby he was required to candidly participate in the polygraph process or face revocation of his probation, and his pleas of "true" were involuntary and unknowingly made as a result of ineffective assistance of counsel without knowledge or advice that he could challenge the State's inadmissible polygraph evidence. The trial court conducted a hearing on Selby's motion for new trial, and after hearing evidence, the trial court denied Selby's motion for new trial and found no evidence of ineffective assistance by Selby's trial counsel.

3

## STANDARD OF REVIEW

We review a trial court's ruling on a motion for new trial for an abuse of discretion, "reversing only if the trial judge's opinion was clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the trial court's ruling, must not substitute our judgment for that of the trial court, and must uphold the ruling if it was within the zone of reasonable disagreement. *Id.*; *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Riley*, 378 S.W.3d at 457. A trial court abuses its discretion in denying a motion for new trial if no reasonable view of the record could support its ruling. *Id.*; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

## ANALYSIS

In issue one, Selby contends that the trial court lacked jurisdiction to revoke his probation. According to Selby, the record establishes that the motion to revoke his unadjudicated community supervision was not filed before his community supervision period expired, because although the document is file-stamped April 1, 2016, the file-stamp cannot be trusted because the record shows that it had been altered. Selby also argues that a valid capias did not issue before his community

4

supervision expired, because the record shows that the original capias is not signed by a deputy district clerk, is not officially attested to, does not bear the seal of the State of Texas, and is not file-stamped. The State maintains that the trial court had jurisdiction to revoke Selby's community supervision.

A trial court retains jurisdiction to hold a hearing and to proceed with an adjudication of guilt, regardless of whether the period of community supervision imposed on the defendant has expired, "if before the expiration the attorney representing the state files a motion to proceed with the adjudication and a capias is issued for the arrest of the defendant." Tex. Code Crim. Proc. Ann. art. 42.12 § 5(h) (West Supp. 2016). "The operative rule is that the duration of a time period during which a person suffers specified restrictions upon his freedom by virtue of either a sentence of imprisonment or community supervision includes the first day in which such restrictions upon freedom operate and excludes the anniversary date." *Nesbit v. State*, 227 S.W.3d 64, 68 (Tex. Crim. App. 2007) (footnote omitted).

The relevant time period with respect to the capias requirement is the time at which the capias is actually issued. *Ex parte Moss*, 446 S.W.3d 786, 792 (Tex. Crim. App. 2014). Chapter 23 of the Texas Code of Criminal Procedure defines a capias as a writ that is "'issued by a judge of the court having jurisdiction of a case after commitment or bail and before trial, or by a clerk at the direction of the judge[.]"

5

Tex. Code Crim. Proc. Ann. art. 23.01(1) (West 2009). A capias is sufficient if it has the following requisites: runs in the name of the State of Texas, names the person whose arrest is ordered, specifies the offense of which the defendant is accused, names the court to which and the time when it is returnable, and indicates that it is dated and attested officially by the authority issuing the same. Tex. Code Crim. Proc. Ann. art. 23.02 (West 2009).

In his motion for new trial, Selby requested that the trial court issue findings of fact and conclusions of law. The trial judge denied the motion for new trial without issuing findings of fact and conclusions of law. When a trial court fails to make specific findings of fact and conclusions of law, it is presumed that the trial court made the necessary findings to support its decision. *Ice v. State*, 914 S.W.2d 694, 695 (Tex. App.—Fort Worth 1996, no writ.). Because the order the trial judge signed denying Selby's motion for new trial does not state that it found that the motion to revoke was timely filed and that a valid capias was timely issued, the implied findings in this case include all the findings necessary to support the legal conclusion that the trial court had jurisdiction to revoke Selby's community supervision. *See id.* at 695-96. This includes the implied findings that the motion to revoke was timely filed and the original capias was signed by the district clerk and timely issued.

Both Selby and the State agree that the first day of Selby's ten-year period of community supervision was April 4, 2006, and that his expiration date was April 3, 2016. The record shows that the State's motion to revoke is file-stamped April 1, 2016. Although Selby argues that the file-stamp cannot be trusted because the document indicates that it was filed at ten o'clock in the morning, which is prior to the time that Selby made admissions during the pre-test polygraph interview that are the basis of the violations in the motion to revoke, our review of the record supports the implied finding that the motion was timely filed.

Matthew Poston, the assistant district attorney who signed the motion to revoke, testified that he assisted in preparing the motion. Poston explained that in addition to the motion to revoke, a judge's fiat, the alias capias, and the precept to serve were also prepared on April 1. Poston testified that on April 1, he presented the motion to revoke, the judge's fiat, the alias capias, and the precept to serve to Judge Morefield for approval sometime after 3:27 p.m. According to Poston, Judge Morefield determined that the petition to revoke was sufficient to order Selby's arrest, and Judge Morefield signed the judge's fiat on April 1. Poston explained that the paperwork was filed immediately after the judge signed the fiat.

Tania McGrath, the deputy district clerk, testified that she is the designated criminal clerk for the 75th District Court and that Delores Wiley is the designated

7

criminal clerk of the 253rd District Court. McGrath testified that when she receives a document at the district clerk's counter, she file-stamps it. McGrath explained that the time should be filled in when the document is given a Bates stamp, but there are occasions when the time is not filled in. According to McGrath, when a clerk receives a document that has been file marked but does not have the time filled in, the "general rule of thumb is to put it at 10:00 a.m. because that's when answers are due and the general mail generally gets there."

McGrath testified that the motion to revoke was file-stamped on April 1, and it was assigned to the 253rd District Court, but Wiley, the designated clerk for the 253rd, was not working on April 1. McGrath testified that it was her name written underneath the file-stamp on the State's motion to revoke that was filed on April 1. McGrath further testified that she did not write in the 10:00 a.m. time. According to McGrath, she issued the alias capias and the precept to serve on April 1. McGrath explained that she made copies of the documents and placed them in Wiley's basket.

Wiley agreed that there was an office policy to put 10:00 a.m. on documents that had been filed with the clerk's office but which did not include a time. Wiley testified that when another clerk receives a criminal document belonging to the 253rd, Bates stamps it, and places it in her basket, she puts 10:00 a.m. on the document if it does not have a time. Wiley testified she was not at work on Friday,

8

April 1, and on the following Monday, she wrote in the 10:00 a.m. time on the motion to revoke. Wiley also testified that State's Exhibit M, which is the returned alias capias, shows that the alias capias was signed by McGrath and issued on April 1.

Donna Brown, the District Clerk, testified that the motion to revoke, judge's fiat, alias capias, and precept to serve were issued on April 1. Brown agreed that an alias capias needed a signature to be valid, and she testified that she did not know whether State's Exhibit H, a copy of the alias capias, had a signature. However, Brown testified that State's Exhibit H is an unreturned copy of the alias capias, and the clerk's file shows that the original, returned alias capias was signed. Brown explained that the sheriff's office stamped the original with a sad face stamp, and that stamp indicates that a document is the original.

We conclude that the record shows that the State's motion to revoke was timely filed on April 1, and that the original alias capias for Selby's arrest was signed by McGrath and also issued on April 1. We further conclude that the trial court had jurisdiction to revoke Selby's probation. We overrule issue one.

In issue two, Selby maintains that his pleas of "true" were involuntary, unknowing, and made as a result of ineffective assistance of counsel. Selby argues that the motion to revoke was based on inadmissible polygraph evidence, and his

9

waiver of viable objections to the polygraph evidence and conditions were the result of inept advice of counsel. Selby maintains that he was prejudiced by his trial counsel's deficient performance.

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). An appellant must demonstrate a reasonable probability that but for his counsel's errors, the outcome would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id*.

Counsel has a duty to conduct a reasonably substantial, and independent examination of the facts, circumstances, pleadings, and laws. *Strickland*, 466 U.S. at 680. To render reasonably effective assistance, an attorney must have firm command

10

of the facts of the case and the governing law. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). "It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision." *Id.* (citing *Ex parte Duffy*, 607 S.W.2d 507, 526 (Tex. Crim. App. 1980), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999)). Thus, without a firm command of the law governing the case, a lawyer cannot render effective assistance of counsel to the defendant. *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983); *Compton v. State*, 202 S.W.3d 416, 422 (Tex. App.—Tyler 2006, no pet.). In our view, the law governing the case includes relevant law concerning the admissibility of polygraph evidence and the defendant's right to assert his Fifth Amendment privilege against self-incrimination. *See Dansby v. State*, 448 S.W.3d 441, 449-452 (Tex. Crim. App. 2014).

Our review of the record, which includes Selby's motion for new trial and the attached exhibits, shows that the evidence supports Selby's contention that his counsel's performance fell below an objective standard of reasonableness and such deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687-88, 694. The record shows that during the hearing on Selby's motion for new trial, the

trial court heard evidence of trial counsel's ineffective assistance. Attached to Selby's motion for new trial is Selby's affidavit, in which Selby averred that he felt compelled by the probation order to participate in the polygraph examination process and believed that if he had refused to participate it would have been a violation of his probation. Selby averred that he was advised by counsel that he must plead "true" to the allegations, and that he was not advised that he could plead "not true" and have counsel confront the polygraph examiner and potentially have the evidence excluded. Selby further averred that he was not informed by counsel that the Texas Court of Criminal Appeals had found polygraph test results inadmissible, that polygraph test results cannot be used as grounds for revocation of community supervision, and that he could refuse to answer polygraph exam questions and invoke his Fifth Amendment right. According to Selby's affidavit, had he known that he could invoke his Fifth Amendment right, not answer the polygraph questions, and object to the use of the polygraph evidence, he would have done so. Selby stated that neither his probation officer, trial attorney, nor the polygraph examiner informed him that he could invoke his Fifth Amendment right, decline to answer the questions, and be immune from penalty for doing so.

The trial court also considered an affidavit from Selby's trial counsel. In his affidavit, counsel averred that he had advised Selby to plead "true" to the allegations

12

in the State's motion to revoke because he believed that Selby had made the admissions during the pre-polygraph and post-polygraph interviews, but "[t]his was not a strategic decision, but rather based on the fact that I was not aware that those admissions might not be admissible because of the compulsive nature of the probation orders, the lack of immunity extended to Selby, and the fact that they were the fruits of actually inadmissible evidence[.]" Counsel stated that he had "limited interactions with the polygraph examination process . . . and was further unfamiliar with the . . . line of cases regarding the admissibility of polygraph results and polygraph evidence in probation proceedings." Counsel averred that if he had known that there was a chance he could prevail on the motion by challenging the admissibility of the polygraph evidence, he "would have advised Selby to plead 'not true' and required the State to prove the allegations." Trial counsel also testified at the motion for new trial. Counsel disagreed that he had stated in his affidavit that he had been ineffective. Counsel testified that he had discussed with Selby the options of pleading "true" or "not true," and that Selby decided to plead "true." Counsel explained that he had a trial strategy in the case, and the strategy consisted of Selby taking responsibility in an attempt to mitigate punishment since Selby had completed almost ten years of probation. Counsel testified that he did not object to the State admitting the disc of the polygraph examination and using Selby's

13

admissions during the pre-test interview as proof of the allegations in the State's motion to revoke. Counsel further testified that he knew that the results of the polygraph exam could not be used as a basis in the State's motion to revoke. However, counsel admitted that when he represented Selby, he was not aware of the case law which states that a probationer cannot be required to choose between making incriminating statements and jeopardizing his conditional liberty. Counsel also admitted that he was not aware of the *Dansby* case and the issues associated with the compulsory nature of the polygraph.

The record shows that trial counsel did not have a firm command of the governing law of the case and that he failed to conduct the necessary legal investigation which would have enabled him to make an informed decision concerning whether to advise Selby to plead "true" or "not true" to the violations. *See Welborn*, 785 S.W.2d at 393-94. Had counsel conducted a reasonably substantial and independent examination of Selby's circumstances and the law involved, counsel would have known that a reasonable trial strategy would have included challenging the admissibility of the polygraph evidence, advising Selby to plead 'not true,' and requiring the State to prove the allegations.[1] *See*

---

[1] These include relevant law concerning the admissibility of polygraph evidence, the defendant's right to assert his Fifth Amendment right against self-incrimination, and whether a defendant can be faulted for failing to preserve his Fifth

*Strickland*, 466 U.S. at 680; *Dansby*, 448 S.W.3d at 449-452; *Welborn*, 785 S.W.2d at 393. However, without a firm command of the relevant law, counsel was unable to effectively assist Selby. *See Lilly*, 656 S.W.2d at 493. On this record, we conclude that the performance of Selby's trial counsel fell below an objective standard of reasonableness and that counsel's error was so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 688.

The second part of the *Strickland* test requires that Selby "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 669. In this case, prejudice to Selby is undeniable, and more than adequate to satisfy the second part of the *Strickland* test. As a result of counsel's failure to challenge the admissibility of the polygraph evidence, Selby pleaded "true." Had Selby's trial counsel challenged the admissibility of the polygraph evidence at the revocation hearing, there is a reasonable probability that the evidence would have been excluded. Because both of the violations in the State's motion to revoke were based on the polygraph evidence, the State would not have been able to prove the violations without the use of the polygraph evidence, and the trial court would have had no evidence on which it

_____

Amendment complaint when the defendant had not been placed on fair notice that waiver of his Fifth Amendment right would be required for him to comply with his conditions of community supervision.

could revoke Selby's probation. We conclude that Selby has satisfied both requirements of the *Strickland* test. We further conclude that the trial court erred in failing to find that Selby received ineffective assistance of counsel during his revocation proceeding and abused its discretion by denying Selby's motion for new trial. *See Riley*, 378 S.W.3d at 457.

In his second issue, Selby also argues that the use of his pre-test and post-test statements obtained during the polygraph process violated his Fifth Amendment right against self-incrimination. Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "It is well settled that the Fifth Amendment insulates probationers from compelled self-incrimination." *Dansby v. State*, 398 S.W.3d 233, 239 (Tex. Crim. App. 2013). "Supreme Court decisions have 'made clear' that a state may 'not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege.'" *Id.* at 240 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 438 (1984)). Accordingly, while a probationer may be compelled to appear and testify about matters relevant to his probationary status, he cannot be "required . . . to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." *Dansby*, 398 S.W.3d at 240. The State "may validly insist on answers to even incriminating

16

questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." *Murphy*, 465 U.S. at 435 n.7.

The "privilege against compelled self-incrimination is not ordinarily self-executing." *Chapman v. State*, 115 S.W.3d 1, 6 (Tex. Crim. App. 2003). Generally, a criminal defendant must timely assert his privilege. *Id.* "[T]he critical question is whether appellant affirmatively invoked his right against self-incrimination, and if not, whether the facts in this case fall within 'the classic penalty situation' exception to this general rule, thereby relieving him of the responsibility to assert his privilege." *Id.* "The Supreme Court has identified the key inquiry in this penalty situation as 'whether the accused was deprived of his free choice to admit, to deny, or to refuse to answer.'" *Id.* (quoting *Garrity v. New Jersey*, 385 U.S. 493, 496 (1967)).

On appeal, Selby acknowledges that he did not affirmatively invoke his Fifth Amendment right, but argues that he was placed in a "classic penalty situation." According to Selby, after he failed to pass Polygraph I, he was required to submit to Polygraph II on the "eve of the expiration of his probation." Selby maintains that although the polygraph examiner told him that he had the right to remain silent or terminate the polygraph exam, the conditions of his probation state that "any refusal

17

to submit to such assessment is a violation of probation." Selby contends that the polygraph examiner did not tell him that the test could not be used as grounds for revocation or advise him that he could assert his Fifth Amendment right without fear of revocation, nor did the State offer him "use immunity" to eliminate the looming threat of revocation.

According to Selby, he was already in fear of revocation "merely by having been required to submit to Polygraph II on the heels of Polygraph I on the last effective day of his probation term." Selby contends that he was never told that he could remain silent and not participate without fear of revocation, and he points out that at the motion for new trial, the chief probation officer testified that the probation department would have filed a motion to revoke had Selby not gone to Polygraph II. Selby argues that due to the probation order requiring him to participate in polygraph exams to be in compliance, along with the timing and circumstances of Polygraph II, he was forced to either make incriminating statements and jeopardize his conditional liberty, or remain silent, which would also jeopardize his conditional liberty. Selby maintains that due to the circumstances, he was not required to affirmatively invoke his Fifth Amendment right.

The record shows that the results of Polygraph II were not admitted into evidence during Selby's revocation hearing. Selby's counsel and the State stipulated

18

that the disc of Polygraph II was only offered to show the pre-test interview, the test on the video, and the post-test interview. The pre-test interview contains admissions Selby made to the examiner concerning his viewing and possessing of pornography, which is a violation of his probation. In the post-test interview, Selby admitted to violating his probation by being in the proximity of minors. The State's motion to revoke alleges that Selby violated two conditions of his community supervision, and both of those grounds directly relate to the admissions that Selby made to the polygraph examiner during the pre-test and post-test interviews. Thus, the State did not allege any violations that are independent of the complained-of polygraph evidence.

On this record, we conclude that Selby's case falls within "the classic penalty situation" exception to the general rule that a criminal defendant must affirmatively invoke his right against self-incrimination. *See Chapman*, 115 S.W.3d at 6. We further conclude that Selby's failure to raise a Fifth Amendment objection to the use of his pre-test and post-test admissions obtained during the polygraph process did not result in procedural default of his complaint on appeal. *See Dansby*, 448 S.W.3d at 443. Selby cannot be faulted for failing to object on the basis that his admissions violated his Fifth Amendment constitutional right because he was not placed on

notice that he would be required to "incriminate himself" as part of his conditions of community supervision. *See id.*

In summary, having concluded that the trial court erred in failing to find that Selby received ineffective assistance of counsel during his revocation proceeding and abused its discretion by denying Selby's motion for new trial, we sustain issue two. Accordingly, we remand the cause for a new revocation hearing, and on remand, the trial court must address the merits of Selby's Fifth Amendment complaint concerning the use of his pre-test and post-test admissions obtained during the polygraph process. Having remanded the cause for a new revocation hearing, we need not consider Selby's argument that the evidence is insufficient to support revocation. *See* Tex. R. App. P. 47.1. We further note that Selby's issue two argument that the probation terms that he allegedly violated were impossibly broad and ambiguous is untimely, as he should have raised that complaint when the trial court imposed his deferred adjudication community supervision. *See Hawkins v. State*, 112 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2003, no pet.).

In issue three, Selby argues that the polygraph condition is unreasonable both in itself and as applied to him. The legislature has provided that a trial court may require a "sex offender as a condition of community supervision to submit to treatment, specialized supervision, or rehabilitation according to the offense-specific

20

standards of practice adopted by the Council on Sex Offender Treatment." Tex. Code Crim. Proc. Ann. art. 42.12 § 11(i) (West Supp. 2016). Since 2006, the Council on Sex Offender Treatment has adopted a set of standards for conducting polygraph examinations of adult sex offenders. *Mitchell v. State*, 420 S.W.3d 448, 450 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see* 22 Tex. Admin. Code § 810.64(c)(17) (West 2011). Since the Legislature has reenacted article 42.12 after the publication of the standards, we must presume that the Legislature has acquiesced in the Council's adoption of polygraph testing as an acceptable tool in sex offender treatment. *Mitchell*, 420 S.W.3d at 450. Because we must further presume that the Legislature enacts every statute with the intent to achieve a just and reasonable result, we conclude that polygraph examinations are presumptively reasonable conditions of community supervision. *Id.*; *see* Tex. Gov't Code Ann. § 311.021(3) (West 2013).

In considering whether the polygraph condition is unreasonable as applied to Selby, we note that a trial court does not abuse its discretion by requiring a defendant to submit to a polygraph examination as a condition of community supervision. *Ex parte Renfro*, 999 S.W.2d 557, 560-61 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Polygraph examinations are reasonable conditions if used to assist in treatment, planning, and case monitoring. *Mitchell*, 420 S.W.3d at 451. Nor is the

21

condition unreasonable because it requires the appellant to either submit to an examination or assert his Fifth Amendment right to remain silent, because a defendant cannot be penalized for asserting his Fifth Amendment rights. *Id*. at 451-52. While a defendant may be compelled to appear and give testimony about matters relevant to his probationary status, the State cannot use those answers in a criminal proceeding. *Dansby*, 398 S.W.3d at 240.

The specific condition of which Selby complains states that "[t]he defendant shall submit to any program of physiological assessment at the discretion of the probation officer, to include the use of . . . the polygraph, to assist in treatment, planning, and case monitoring; any refusal to submit to such assessment is a violation of probation." Swan, Selby's probation officer, testified that the trial court had instructed Selby to have Jules Peterson conduct his polygraph examinations, but toward the end of his community supervision, Selby used another examiner. According to Swan, Selby was instructed to complete a polygraph with Peterson by April 1, and Selby complied. Swan explained that Selby had to complete the polygraph examination by April 1, because his probation was about to expire, and Selby had to complete a certain number of polygraph examinations with Peterson to be in compliance with his probation terms.

The condition expressly states that one of its purposes is case monitoring. Based on Swan's testimony, the probation department had ordered Selby to complete the polygraph as a condition of his probation, and thus, it was used to assist in monitoring Selby's probation. *See Renfro*, 999 S.W.2d at 560. We conclude that the condition is not unreasonable as applied to Selby. We overrule issue three.

In issue four, Selby contends that the trial court violated his rights by failing to consider the entire range of punishment. Because we have sustained Selby's second issue, reversed the trial court's order denying Selby a new trial, and remanded for a new revocation hearing, we need not consider Selby's fourth issue, as it would not result in any greater relief. *See* Tex. R. App. P. 47.1.

REVERSED AND REMANDED.

 

                                   _____
                                       STEVE McKEITHEN
                                       Chief Justice

Submitted on June 15, 2017
Opinion Delivered July 19, 2017
Publish

Before McKeithen, C.J., Kreger and Horton, JJ.