**AFFIRMED and Opinion Filed July 15, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00664-CV

## IN THE MATTER OF J.H.D., A JUVENILE

### On Appeal from the 417th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 417-70487-2019

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

J.H.D., a juvenile, appeals the trial court's June 22, 2022 TJJD Disposition Order and its Sex Offender Registration Order after Deferral Order signed the same date (together, the Orders). Those Orders revoked J.H.D.'s probation, committed him to the Texas Juvenile Justice Department (TJJD), and required him to register as a sex offender. J.H.D. raises four issues in this Court. He challenges the effectiveness of his trial and initial appellate counsel at three different points in their representation. He also challenges the evidentiary support for the trial court's finding that he violated the condition of his probation requiring him to report for a polygraph examination. For the reasons discussed below, we affirm the trial court's Orders.

## BACKGROUND

J.H.D. entered Collin County's juvenile justice system in 2018 when, at the age of thirteen, he was accused of assaulting another boy during gym class. The State petitioned the court to adjudicate him delinquent, but before that charge was resolved J.H.D. was accused of committing sexual indecency and assault against two young girls. In October 2019 he entered an agreed plea to the indecency charge; he was adjudicated delinquent and was placed in the county's juvenile sex offender's in-patient treatment program. He was also placed on two years of probation with terms that included successful completion of the treatment program, submitting to polygraph examinations as directed by the Licensed Sex Offender Treatment Provider (LSOTP), and remaining enrolled in school.

J.H.D. completed the county treatment program, but soon after he was discharged, he ran away from his grandmother's home where he lived, and he was accused of inappropriate conduct toward another juvenile offender. In November 2020, the State filed its First Motion to Modify Disposition, alleging that J.H.D. had violated terms of his probation. The trial court heard the motion on January 7, 2021. J.H.D. pleaded true to the violations. The trial court extended his probation two years and placed him in the in-patient sex offender treatment program at Rockdale Youth Academy.

Once again, J.H.D. successfully completed the in-patient treatment program; he was discharged from Rockdale in August 2021, after seven months. However,

according to his juvenile probation officer (JPO), J.H.D. stopped attending counseling sessions and stopped taking his medication. The JPO testified that, "On December 7th of 2021 we had a scheduled polygraph for [J.H.D.] at our department," but the family called and said they had Covid-like symptoms. The polygraph was rescheduled to December 27, 2021. But J.H.D. did not attend that session either because—his grandmother stated—she had received a text message telling her the test had been cancelled; apparently no one from the probation department sent such a text. J.H.D. eventually took the polygraph on January 13, 2022.

On January 26, 2022, the State filed its Second Motion to Modify Disposition (the Second Motion), alleging that J.H.D. violated these five terms of his probation:

> (7) Respondent shall submit to periodic polygraph examinations for the purpose of evaluating the child's treatment progress as directed by the Registered Sex Offender Treatment Provider. The Respondent and parents will pay the cost incurred for polygraph examinations.
>
> (10) Respondent shall not view or access any sexual material or pornography, including but not limited to the Internet. Respondent shall not have access to the Internet except under adult supervision.
>
> (15) Respondent shall reside with parents after release from Post-Adjudication Detention and shall notify the probation officer immediately of any change of address and/or telephone number.
>
> (16) Respondent shall be enrolled in school. If that is not possible (and agreed to by the Court or your Probation Officer), you must seek and maintain suitable employment. Respondent shall inform your probation officer, parents/guardian of your work schedule and notify your probation officer immediately of any change in employment.
>
> (17) Respondent shall be at your residence by 6:00 p.m. daily, unless attending a necessary and approved school event, extracurricular activity, or [another event] if ordered by the Court or approved by the

Juvenile Probation Department, work, or when accompanied by a responsible adult over the age of 21. Respondent shall remain at said residence until 7:00 a.m. the following morning. Your probation officer may raise or lower your curfew time based on your compliance with conditions of your probation.

The Second Motion described the purported violation of each term. The State's descriptions of violations numbered (10), (15), (16), and (17) all begin with the phrases "On 1-13-2022, Respondent disclosed," or simply "Respondent disclosed." For each of those four terms, the only evidence cited was J.H.D.'s January 13 polygraph admission to that violation.

At the juvenile court's hearing on the Second Motion, J.H.D.—through his appointed attorney—pleaded true and signed a stipulation of evidence and waivers admitting each of the alleged probation violations. The court found the allegations true and then heard testimony concerning appropriate disposition. The court ultimately granted the Second Motion, revoked J.H.D.'s probation, and committed him to TJJD. The court also granted the State's Motion to Enter Judgment for Sex Offender Registration after Prior Deferral.

This appeal followed, and the juvenile court appointed new counsel for J.H.D. on appeal. During the thirty days following the trial court's signing of the Orders, neither trial nor appellate counsel filed a motion for new trial on J.H.D.'s behalf.

After a series of motions to extend time, the initial appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), averring that there were no arguable issues in J.H.D.'s appeal. We granted counsel's motion to withdraw, but

we struck the *Anders* brief because counsel had represented J.H.D. in the juvenile court during his initial plea proceeding below. We abated the appeal until the juvenile court could appoint new appellate counsel. Once that appointment was made, the appeal proceeded.

**DISCUSSION**

We address J.H.D.'s issues in turn.

**Ineffective Assistance of Counsel: J.H.D.'s Fifth Amendment Rights**

In his first issue, J.H.D. contends that his trial counsel's failure to object to evidence obtained from his polygraph examination demonstrated ineffective assistance of counsel, arguing that the polygraph violated his Fifth Amendment right to counsel and right against self-incrimination and was harmful to him. To prevail on an ineffective assistance of counsel claim, appellant must prove by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). Since *Strickland*, we have acknowledged "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. We make this

determination in light of all the circumstances to adjudge whether the challenged actions fall outside "the wide range of professionally competent assistance." *Hart*, 667 S.W.3d at 782.

It is undisputed that four of the five grounds on which the trial court revoked J.H.D.'s probation were based solely upon the responses he gave during the polygraph examination. And well-settled law acknowledges that compelled self-incrimination through a polygraph examination can implicate a probationer's Fifth Amendment rights. *See generally*, *Dansby v. State*, 398 S.W.3d 233, 239–40 (Tex. Crim. App. 2013); *see also Selby v. State*, 525 S.W.3d 842, 852 (Tex. App.—Beaumont 2017, no pet.) (addressing "classic penalty situation" exception to general rule that criminal defendant must affirmatively invoke his right against self-incrimination).

However, claims of ineffective assistance must be firmly rooted in the record. *Hart*, 667 S.W.3d at 782. "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004). A silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Thompson v. State*, 9 S.W.3d 808 S.W.3d, 813–14 (Tex. Crim. App. 1999). From the information available to us, we can only speculate as to why

counsel failed to object to evidence developed solely from J.H.D.'s polygraph examination; we will not speculate as to some basis for counsel's decision. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App.1994); *Scheanette*, 144 S.W.3d at 510. On this record, we cannot conclude that trial counsel's performance was deficient. *See Jackson*, 877 S.W.2d at 772.

We overrule J.H.D.'s first issue.

### The Failure-to-Submit-to-Polygraph Condition

In its Second Motion, the State contended that J.H.D. had violated the condition of his probation that required him to "submit to periodic polygraph examinations for the purpose of evaluating [his] treatment progress as directed by the Registered Sex Offender Treatment Provider" (Term (7)). The State alleged that J.H.D. had violated the condition in this manner:

> Respondent was scheduled to take a polygraph on 12-27-2021 and did not attend. Respondent's grandmother stated that she received a text from another JPO the night before stating the polygraph was cancelled. Grandmother was unable to provide documentation of the text. On 1-13-2022, Respondent arrived to take his polygraph and he and his grandmother stated he was very ill, diarrhea, excessive shaking and nausea. JPO met individually with Respondent and advised him that he must take the test today, and he then no longer felt ill, and the test was completed.

J.H.D. attacks the finding that he violated this condition on two grounds, which form the basis of his second and third appellate issues.[1]

---

[1] In his briefing J.H.D. points out that this purported violation of Term (7) was the only violation alleged that was not based on his statements in the polygraph examination. Thus, had we concluded that his

*Sufficiency of Evidence of Violation*

In his second issue, J.H.D. contends that the trial court abused its discretion when it found there was sufficient evidence to support the allegation that he violated Term (7) of his probation. A trial court's modification of disposition is governed by section 54.05 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 54.05. When a juvenile's prior disposition is based on a finding that the juvenile engaged in a felony-level offense, the trial court may modify the disposition and commit the juvenile to the TJJD if the court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful order of the court. *See id.* § 54.05(f).[2] We review a trial court's determination of a suitable disposition for a child under section 54.05 employing an abuse of discretion standard. *In re A.S.*, No. 05-13-01022-CV, 2013 WL 6405489, at *3 (Tex. App.—Dallas Dec. 5, 2013, no pet.) (mem. op.).

J.H.D. contends that the evidence is insufficient to support a finding that he violated Term (7). Legal and factual insufficiency are relevant factors in determining

counsel was ineffective in failing to object to evidence from that examination, Term (7) would have been the only possible basis for revocation of his probation. Because we could not so conclude on this undeveloped record, we could affirm revocation on polygraph-based violations and would not need to address J.H.D.'s challenges to Term (7). Nevertheless, in the interest of judicial efficiency, we address J.H.D.'s second and third issues.

[2] J.H.D. initially argued that the probation condition requiring him to submit to polygraph examinations was not a reasonable and lawful order of the court. He contended that the condition represents an impermissible delegation of the court's authority to the LSOTP, relying, inter alia, on provisions of the code of criminal procedure that provide "only the court" may grant community supervision, impose conditions, discharge the defendant, and revoke the defendant's community supervision. TEX. CODE CRIM. PROC. ANN. arts. 42A.051, 42A.754. "[A] trial court cannot delegate its duty and responsibility for determining the conditions of probation to the probation officer or anyone else." *DeGay v. State*, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987). However, in his reply brief, J.H.D. has conceded that the trial court may lawfully delegate this authority to a juvenile's treatment provider, here the LSOTP. *See*. FAM. § 54.0405.

whether the juvenile judge abused its discretion. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.). In our legal sufficiency review, we consider the evidence tending to support the findings; we will reverse the judgment only if there is no evidence of probative force to support the relevant finding. *Id.* And in our factual sufficiency review, we consider and weigh all the evidence; we will reverse the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

J.H.D. points specifically to the fact that the polygraph examination was ordered by the JPO, not the LSOTP as Term (7) set forth. He contends that he was not under the care of an LSOTP at the time he was ordered to take the polygraph. The State points to records indicating that Dr. Terri Bauer, an LSOTP and director of the Collin County Juvenile Sex Offender Treatment Program, participated in "staffings" in 2019 and 2020 during which J.H.D.'s case was discussed. Dr. Bauer had also testified in January 2021, before J.H.D.'s placement at Rockdale, that when that placement was complete, he would return to her oversight. These earlier examples of Dr. Bauer's involvement do not persuade us that the State carried its burden to prove that Dr. Bauer was involved in ordering J.H.D.'s January 2022 polygraph.

However, as we summarized above, J.H.D. pleaded true and stipulated to violating Term (7), as he did to all violations the State alleged. We have held in a juvenile case that a plea of true justifies the court's finding that the violation of

–9–

probation was committed by a preponderance of the evidence. *See In re K.B.*, 106 S.W.3d 913, 915 (Tex. App.—Dallas 2003, no pet.). Accordingly, given the record before us, we must conclude the evidence is legally and factually sufficient to support the trial court's finding that J.H.D. violated Term (7) of his probation conditions.

We overrule J.H.D.'s second issue.

*Ineffective Assistance: Failure to Argue Evidence Insufficiency*

In his third issue, J.H.D. argues that his trial counsel provided deficient representation by failing to argue that Term (7) was supported by insufficient evidence. We have concluded that—based upon this record, which includes J.H.D.'s plea of true and his stipulation to a violation of that term—the evidence was in fact sufficient to support the trial court's finding. Accordingly, we cannot conclude that trial counsel was deficient for failing to argue that it was not.

We overrule J.H.D.'s third issue.

**Ineffective Assistance: Failure to File Motion for New Trial**

In his fourth issue, J.H.D. argues that his initial appellate counsel provided ineffective assistance of counsel by failing to file a motion for new trial that addressed—at a minimum—violation of his Fifth Amendment rights and the voluntariness of his plea of true to the State's allegations. The time for filing a motion for new trial is a critical stage of the proceedings, and a defendant has a constitutional right to counsel during that period. *Cooks v. State*, 240 S.W.3d 906,

911 (Tex. Crim. App. 2007). However, when a defendant is represented by counsel during this time period—as J.H.D. was—Texas law includes the rebuttable presumption that his counsel continued to represent him adequately during this critical stage. *See id.* In addition, "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998). Evidence is required to rebut the presumption of effective representation. *Cooks*, 240 S.W.3d at 911 ("Even when a defendant can rebut this presumption with evidence that he was deprived of adequate counsel during this critical stage, this deprivation of counsel is subject to a harmless error or prejudice analysis."). In most cases, a motion for new trial is the single vehicle for bringing evidence of ineffective representation to the record in a direct appeal. Here, in the absence of a motion for new trial, there is nothing in the appellate record that rebuts these presumptions.

J.H.D.'s current appellate counsel has identified arguable issues in this appeal. We know, thus, that the initial appellate counsel's *Anders* brief was inappropriate on two bases: her prior trial court representation and her failure to identify arguable issues below. Counsel for the State conceded at oral argument that the filing of the *Anders* brief "raised a question" as to the effectiveness of the original appellate representation. But because we must strongly presume counsel's effectiveness, we cannot assume, as J.H.D. does, that counsel did not understand the law and the facts. *See Paige v. State*, No. 05-17-00660-CR, 2018 WL 2979848, at *3 (Tex. App.—

Dallas June 14, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Thompson*, 9 S.W.3d at 812). The presumption arising from her failure to file a motion for new trial requires more for rebuttal.

We overrule J.H.D.'s fourth issue.

### Concerning a Writ of Habeas Corpus

Our resolution of this appeal is based on and limited by the record as it exists before us—what is in the record and what is not in it. We are bound by the record as were the highly professional counsel who ultimately argued both sides of this appeal to us. In response to the Court's question at argument, both counsel briefed the question of whether a juvenile has a right to habeas relief, and they agreed that a district court does have plenary power to grant that relief through Article V, section 8 of the Texas Constitution. *See Ex parte Valle*, 104 S.W.3d 888 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals has stated that, because the reasonableness of counsel's choices often involves facts that do not appear in the appellate record, a petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective assistance claims. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

The Texas Code of Criminal Procedure entitles an indigent habeas applicant to appointed post-conviction counsel whenever the court concludes that the interests of justice require representation. CRIM. PROC. art. 1.051(d)(3). J.H.D. had a Constitutional right to effective counsel during trial and during the time that a motion

–12–

for new trial could have been filed on his behalf. Counsel for the State in this case expressed certainty at oral argument that should J.H.D. seek habeas relief, the trial court would appoint him counsel. We likewise express confidence that such an appointment would be made. *See generally Ex parte Garcia*, 486 S.W.3d 565, 570 (Tex. Crim. App. 2016), Alcala, J. dissenting ("[W]hen a habeas applicant has complained of ineffective assistance of trial counsel, and when it appears to a habeas court that a colorable claim exists, based either on the substance of the *pro se* pleadings or in light of the record, the habeas court should appoint counsel for such an applicant to pursue that claim in order to ensure that he has been afforded his constitutional right to the effective assistance of counsel.").

## CONCLUSION

We affirm the trial court's Orders.

/Bill Pedersen, III/
_____
BILL PEDERSEN, III
JUSTICE

Do Not Publish
Tex. R. App. P. 47
220664F.U05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF J.H.D., A JUVENILE

No. 05-22-00664-CV

On Appeal from the 417th Judicial District Court, Collin County, Texas Trial Court Cause No. 417-70487-2019.

Opinion delivered by Justice Pedersen, III. Justices Molberg and Goldstein participating.

In accordance with this Court's opinion of this date, the June 22, 2022 Orders of the trial court are **AFFIRMED**.

Judgment entered July 15, 2024.