

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00017-CR

———————————————————

GERSON MOLINA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1598024D

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

The State filed a petition to adjudicate Appellant Gerson Molina guilty, alleging that he had violated the terms of his deferred-adjudication community supervision. After a revocation hearing, a criminal law magistrate found that Molina had violated certain terms of his community supervision, and the district court adjudicated him guilty and sentenced him to 10 years' confinement. On appeal, Molina complains that (1) there were reversible procedural deficiencies related to the transfer of the case to the magistrate; (2) the State did not prove by a preponderance of the evidence that he had violated the terms of his community supervision; and (3) he was not given adequate notice of and an opportunity to object to the terms of his community supervision. We will affirm.

## I. BACKGROUND

### A. RELEVANT COMMUNITY SUPERVISION TERMS

When Molina was placed on five years of deferred-adjudication community supervision for aggravated assault with a firearm, he signed two documents that outlined its terms and conditions as part of his plea bargain. The first document, titled "Conditions of Community Supervision," prohibited Molina from committing additional criminal offenses and required him to pay fees. The second document, titled "Supplement/Amendment to Conditions of Community Supervision High Risk," required Molina to successfully complete the high-risk gang caseload program, stated that he could not "possess a firearm or other dangerous or deadly weapon; nor

2

remain in any vehicle where such a weapon is possessed; or remain in the presence of any armed person," and prohibited him from associating with known gang members and staying in places where gang members congregate.[1]  *See* Tex. Code Crim Proc. Ann. art. 42A.301(a).

## B.  STATE'S PETITION TO PROCEED TO ADJUDICATION

Predicated mainly on allegations that Molina had been involved in an altercation involving a shooting outside of a Fort Worth home, the State filed its petition to proceed with Molina's adjudication and requested that his community supervision be revoked.  The State alleged that Molina had (1) committed the new offense of engaging in organized criminal activity; (2) possessed a firearm; (3) been in a vehicle with an armed person and remained in the presence of an armed person; (4) been discharged from the high-risk caseload program for violating its terms; (5) associated with known gang members; and (6) failed to pay his community supervision fees.

## C.  REVOCATION HEARING

A hearing on the State's petition was held over three days in front of a criminal law magistrate.  *See* Tex. Gov't Code Ann. § 54.656(a)(10).  The record does not contain an order referring the case to the magistrate, but Molina never objected to the

---

[1]The second document appears twice in the record, with one copy bearing the signatures of both Molina and the presiding judge.  The second copy is signed by the judge and a supervision officer but not Molina.

magistrate's presiding over the hearing. Molina pleaded not true to all of the petition's allegations.

Testimony at the hearing established that Molina had been in an altercation at a carwash with seventeen-year-old F.V. *See* Tex. R. App. P. 9.10 (prohibiting use of minor's names in court filings). At some point the altercation ended and F.V. returned to his home in Fort Worth, taking Molina's cell phone with him. Molina left the car wash and drove to another location where he picked up several companions, including two men named Carlos and Isaac. The men then drove to F.V.'s home.

Upon arriving, Molina, Carlos, and Isaac exited Molina's car and entered the front yard where F.V. was sitting in his parked truck on the lawn. F.V. then ran from the truck and into the home. F.V. testified that, as he was running, he heard Carlos say, "You gonna need a new truck" and then he heard Carlos shoot a gun. F.V.'s mother and sister, who were watching from inside the home, testified that they heard gunshots come from the front yard.

F.V.'s sister recorded a short video soon after the three men entered the front yard. A still image from this video shows Molina, Carlos, and Isaac in the front yard. Isaac is standing in the foreground with Carlos and Molina behind him. Carlos appears to be pacing and is openly carrying a handgun at his side in his right hand. Molina stands a few feet to the left of Carlos and both men are facing the home.

Molina testified that he did not know that anyone was carrying a gun while he was in F.V.'s front yard. He said that he heard F.V.'s mother yell that someone had a

4

gun and that he and Carlos then immediately ran to Molina's car and drove away together. According to Molina, he first learned that Carlos had been carrying a gun in the yard when he viewed the image taken by F.V.'s sister.

A police detective who interviewed Molina after the incident testified that Molina told him that he knew that Carlos had a gun while they were in F.V.'s front yard. Further, Molina told the detective that he did not immediately leave the front yard when he realized that Carlos was carrying the gun. Molina stated multiple times to the detective that he knew that he was not allowed to be around guns.

During an investigation of the shooting scene, police found bullet holes in the sides of the house, F.V.'s truck, and Molina's car, and they recovered over 25 shell casings of three different sizes from the street and yard.

The magistrate found orally on the record that it was true that Molina had (1) engaged in organized criminal activity; (2) been in a vehicle where another possessed a firearm and remained in the presence of an armed person; and (3) associated with known gang members. The magistrate also orally adjudicated Molina guilty and sentenced him to ten years' confinement. These pronouncements were also reduced to writing in the magistrate's handwritten certificate of proceedings from the revocation hearing. The magistrate did not prepare any formal, written findings of fact, conclusions of law, or recommendations for the trial court. The trial court then signed its judgment adjudicating Molina guilty and sentencing him to 10 years' confinement.

## II. ANALYSIS

### A. NO ERROR WITH MAGISTRATE ACTION

In his first issue, Molina argues that the trial court's judgment should be vacated because there was a "complete absence of procedure" related to the magistrate's involvement in his case. Citing *Davis v. State*, Molina alleges two deficiencies that, particularly when viewed together, constituted more than simple procedural error: (1) the lack of an order referring the case to the magistrate, and (2) the magistrate's failing to prepare any findings of fact, conclusions of law, or recommendations for the trial court. *See* 956 S.W.2d 555, 560 (Tex. Crim. App. 1997) (holding that attacks directed at irregularities in orders referring cases to a magistrate are procedural attacks that may render a judgment voidable but not automatically void). We disagree with Molina.

### 1. Lack of Referral Order

Molina first complains of the lack of an order referring the case to the magistrate.

A district court may refer to a criminal magistrate certain types of proceedings, including those related to motions to revoke community supervision or to proceed with an adjudication of guilt. Tex. Gov't Code Ann. § 54.656(a)(10) "To refer one or more cases to a magistrate, a judge must issue an order of referral specifying the magistrate's duties." *Id.* § 54.657(a). However, a valid objection is required to preserve complaints about irregularities in the procedure through which a case was

6

referred to a magistrate. *Hoag v. State*, 959 S.W.2d 311, 313 (Tex. App.—Fort Worth 1997, no pet.) (holding that appellant did not preserve error when she never objected to the referral of her case to a magistrate and the referral order was not entered until six days after the transferred proceeding occurred); *see Davis*, 956 S.W.2d at 559-60; *Lemasurier v. State*, 91 S.W.3d 897, 900 (Tex. App.—Fort Worth 2002, pet. ref'd). This includes complaints about whether a valid referral order has been entered before the magistrate presides over the transferred proceeding. *Hoag*, 959 S.W.2d at 313.

It is undisputed that the record here does not contain an order referring Molina's case to the magistrate. It is also undisputed that Molina never objected to his case's referral or to the magistrate's presiding over it.[2] Thus, we overrule this portion of Molina's first issue because Molina failed to preserve it for our review.[3]

---

[2]Notably, in the written plea admonishments signed by Molina, he expressly agreed that he had no objection to having a magistrate hear any proceeding in his case.

[3]Though Molina acknowledges this court's precedent requiring an objection in situations like this, he nonetheless requests that we disregard it. The main authority raised by Molina to support this request is an unpublished case from the Dallas court, which held that a trial court's duty to enter a referral order created a "systemic right" that could not be waived by lack of a valid objection. *See Ex parte DeLeon*, No. 05-11-00594-CR, 2011 WL 3690302, at *1–2 (Tex. App.—Dallas Aug. 24, 2011, no pet.) (not designated for publication). But *DeLeon* is unpersuasive, not only because it is not binding on our decision, but also because it appears to wholly disregard the contrary holding by the Texas Criminal Court of Appeals in *Davis* that the lack of a referral order is merely a procedural irregularity that does not deprive an otherwise qualified magistrate of its authority to hear a case. *See* 956 S.W.2d at 559–60.

7

## 2. Lack of Findings, Conclusions, or Recommendations

Molina next complains that the magistrate failed to prepare any findings of fact, conclusions of law, or recommendations for the trial court to follow. Without these findings, conclusions, and recommendations—Molina argues—the trial court's judgment was invalid. But, there is no law imposing such a duty upon the magistrate, and Molina has not pointed to any affirmative proof that the trial court did not review the magistrate's actions.

The Texas Government Code provides that a magistrate "*may* . . . make findings of fact on evidence," "formulate conclusions of law," and "recommend the rulings, orders, or judgment to be made in a case." Tex. Gov't Code Ann. § 54.658(a)(8), (9), (11) (emphasis added). There is no requirement that the magistrate reduce its findings to writing. *Christian v. State*, 865 S.W.2d 198, 202 (Tex. App.—Dallas 1993, pet. ref'd). At the conclusion of the proceedings, "a magistrate shall transmit to the referring court any papers relating to the case, including the magistrate's findings, conclusions, orders, recommendations, or other action taken." Tex. Gov't Code Ann. § 54.611. Unless the trial court modifies or otherwise rejects the action of the magistrate, that action becomes the decree of the court. Tex. Gov't Code Ann. § 54.662(b). Appellate courts must apply a presumption of regularity to a trial court's adoption of magistrate actions and questions of irregularity may be entertained only if a party offers affirmative proof that the trial court did not review

8

those actions. *Kelley v. State*, 676 S.W.2d 104, 108 (Tex. Crim. App. 1984); *Christian*, 865 S.W.2d at 202.

Thus, the law is clear that, though the magistrate had the discretion to prepare formal written findings, conclusions, and recommendations, it was under no obligation to do so. *See* Tex. Gov't Code Ann. § 54.658(a)(8), (9), (11). Even still, the magistrate's pronouncements are readily apparent in the record from both the record of the revocation hearing and the magistrate's written certificate of the proceedings.

Further, Molina does not identify any evidence from the record to suggest that the trial court did not properly review these pronouncements or any other action of the magistrate. In fact, the record suggests the opposite. The magistrate found that Molina had violated certain terms of his community supervision, adjudicated him guilty, and sentenced him to 10 years' confinement. The trial court's judgment is wholly consistent with these pronouncements.

For these reasons, we conclude that there was no error related to the magistrate's actions or the trial court's adoption of those actions and overrule the remainder of Molina's first issue.

## B. EVIDENCE SUPPORTED THE FINDINGS OF TRUE

The magistrate found it true that Molina had violated the terms of his community supervision when he (1) engaged in organized criminal activity; (2) had been in a vehicle where another possessed a firearm and remained in the presence of an armed person; and (3) associated with known gang members. Molina argues in his

9

second issue that the evidence did not show beyond a preponderance of the evidence that he violated any of these terms. We overrule this portion of Molina's second issue because the evidence supports revocation on at least one of the magistrate's findings. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).

We review a trial court's decision to proceed to an adjudication of guilt and revoke deferred-adjudication community supervision for an abuse of discretion. *Cantu v. State*, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of his community supervision. *Id.* The trial court is the sole judge of the credibility of the witnesses and weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Cantu*, 339 S.W.3d at 691. Proof by a preponderance of the evidence of any one of the alleged violations is sufficient to support a revocation order. *Moore*, 605 S.W.2d at 926.

There is sufficient evidence to show that Molina knowingly rode in his car with Carlos and remained in his presence while Carlos possessed a gun. Molina and Carlos rode together in Molina's car to F.V.'s house. A photo plainly shows Molina standing next to Carlos while Carlos openly carries a gun. Though Molina testified to the contrary, a detective testified that Molina reported having known about Carlos's gun while he stood in F.V.'s yard but did not immediately retreat. The evidence shows

that F.V.'s mother then yelled that there was a gun on the scene and shots were fired. And F.V. heard Carlos say "You gonna need a new truck," shortly before Carlos started shooting. Soon after, Molina and Carlos fled together in Molina's car.

In light of this evidence, we hold that the magistrate did not abuse its discretion when it found it true that Molina had been in a vehicle where another possessed a firearm and remained in the presence of an armed person, and we overrule this portion of Molina's second issue.

### C. MOLINA HAD NOTICE OF HIS COMMUNITY-SUPERVISION TERMS

Finally, Molina contends that, even if the evidence was sufficient to show that he violated any of these three terms of his community supervision, they were unenforceable against him because he had no notice of or opportunity to object to them. Molina argues that he never signed the "Supplement/Amendment to Conditions of Community Supervision High Risk" document (Supplement), which contained the terms prohibiting him from being in the presence of an armed person and known gang members. Because of this, Molina concludes that the magistrate abused its discretion when it found that he violated these terms. We overrule this argument because the record reflects that Molina *did* sign this document and, thus, had adequate knowledge of his community-supervision terms.

A trial court has broad discretion to impose reasonable community supervision terms. Tex. Code Crim. Proc. Ann. art. 42A.301(a). A defendant who is fairly notified of the terms at a hearing at which he has an opportunity to object forfeits any

11

later complaint about those terms. *Dansby v. State*, 448 S.W.3d 441, 447 (Tex. Crim. App. 2014).

The record contains two copies of the Supplement document. One copy does not contain Molina's signature, but the other copy does. The copy bearing Molina's signature is dated April 12, 2021—the same day that the hearing was held at which Molina entered his original plea of guilty and at which the trial court placed him on deferred-adjudication community supervision. Thus, the record shows that Molina was fairly notified of the terms of his community supervision and given fair notice to object to them. Accordingly, we hold that Molina forfeited any complaint related to these terms, and we overrule the remainder of his second issue.

### III. CONCLUSION

Having overruled both of Molina's issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 23, 2022